444 So.2d 105 (1983)
Bailey E. CHANEY, et al.
v.
The STATE MINERAL BOARD of the State of Louisiana.
No. 83-C-0675.
Supreme Court of Louisiana.
December 19, 1983.
*106 William J. Guste, Jr., Atty. Gen., Gary L. Keyser, David C. Kimmel, H. Glen Kent, Jr., Asst. Attys. Gen., for applicants.
Leslie D. Ligon, Jr., Ligon & Ware, Clinton, W. Hugh Sibley, Greensburg, for respondents.
CALOGERO, Justice.
We granted defendant's writ application, and for argument, we consolidated the case with Todd v. State of Louisiana et al., (La.1983) (No. 82-C-2915, decision rendered November 28, 1983 rehearing granted January 5, 1984), principally to decide whether a possessory action may be brought against the State of Louisiana. For the reasons discussed more fully in Todd, a possessory action may be maintained against the state. Corporeal immovables capable of being privately owned may be the object of a possessory action. Because the state may own private things in its capacity as a private person, a possessory action may be maintained against it.
*107 As we determined in Todd,[1] a pertinent consideration when a possessory action is brought against the state is the nature of the land in dispute. In this case, the land in dispute is a portion of the Amite riverbed which runs between St. Helena and East Feliciana Parishes.[2] Since the waters which traverse the Amite River bed, pertinent to this litigation, are non-navigable, the bed is a private thing,[3] and, therefore, a possessory action may be maintained against the state in regard to such property. In this case, the trial judge documented the non-navigability of the waterbody through testimony and photographs. The land in dispute (the bed and bottom of the Amite River) is a private thing and so may be the object of possessory action.
In the possessory action, for plaintiffs to prevail they must show that they were in peaceable possession for one year before being disturbed. La.C.C.P. art. 3658(1) and (2). In this case, the lower courts found that the plaintiffs were in uninterrupted peaceable possession for one year preceding the state's advertisement for bid for oil and gas leases of the bed in question. In a possessory action, the plaintiffs are required to sue within one year of the date of their disturbance. La.C.C.P. art. 3658(3) and (4). That was done in this case. The State Mineral Board advertisement took place on November 12, 1980. On December 17, 1980, a possessory action was filed in St. Helena Parish on behalf of a group of riparian landowners (Harb, et al). On December 30, 1980, a possessory action was filed in East Feliciana Parish on behalf of another group of riparian landowners (Chaney, et al), which sought, as well, to enjoin the lease sale. The two suits were consolidated and tried in the Twentieth Judicial District Court of East Feliciana Parish.
While acknowledging that running water must be kept free for public use, the trial judge found evidence of the plaintiffs' possession of the riverbed itself through testimony of area landowners relative to the posting of signs, dredging for sand and gravel, wading and other recreational uses. He awarded judgment in plaintiffs' favor in the possessory actions and ordered the state to file a petitory action within sixty days after judgment becomes executory or be precluded thereafter from asserting its ownership.[4]
The state appealed contending that the plaintiffs had not sufficiently proven their possession. The Court of Appeal affirmed. 428 So.2d 880 (La.App. 1st Cir.1983). In its application to this Court, in addition to contesting again the sufficiency of plaintiffs' proof of possession offered at trial, the State Mineral Board argued that a private individual may not bring a possessory action against the state. As stated earlier, we granted the state's writ application to consider that question in consolidation with Todd, supra and to consider whether sufficient proof of possession of the bed and bottom of the Amite River had been shown below.
*108 In arguing that a private litigant does not have the right to bring a possessory action against the state, the State Mineral Board contends that the constitutional prohibition against the state's losing land by prescription (La. Const. art. IX, § 4(B)) prevents a possessor from having the requisite "intent to possess" land claimed by the state and always bars a possessory action against the state, irrespective of the private or public character of the property. For the reasons discussed fully in Todd, supra, the constitutional prohibition against losing state land by prescription does not bar a possessory action against the state.
Having determined that a possessory action may be maintained against the State Mineral Board, we now turn to the state's second assignment of error which alleges that the plaintiffs did not sufficiently prove their possession to the portions of the riverbed abutting their alleged properties and to the thread or centerline of the Amite River. Upon review, we agree with the state that possession was not sufficiently proven by the plaintiffs.
The burden of proof in any possessory action is upon the plaintiff to establish the essential elements thereof. La.C.C.P. arts. 3656, 3658; Louisiana Materials Company v. Cronvich, 258 La. 1039, 249 So.2d 123 (1971), cert. denied, 405 U.S. 916, 92 S.Ct. 934, 30 L.Ed.2d 786 (1972). Possession is an essential element of a possessory action. La.C.C.P. art. 3658; Todd, supra.
The Civil Code enumerates two kinds of possession: corporeal possession and constructive possession. Corporeal possession is defined in La.C.C. art. 3425 as "the exercise of physical acts of use, detention, or enjoyment over a thing." Constructive possession is set forth in La.C.C. art. 3426 as follows: "One who possesses a part of an immovable by virtue of a title is deemed to have constructive possession within the limits of his title. In the absence of title, one has possession only of the area he actually possesses." Relative to the proof required in the latter instance, comment (d) to La.C.C. art. 3426 states "[i]n the absence of title, there is no constructive possession: one has possession only of the area he actually possesses. Actual possession must be either inch by inch possession (pedis possessio) or possession within enclosures."
We have recently had occasion to examine the kind of proof necessary to support a successful possessory action. In City of New Orleans v. New Orleans Canal, Inc., et al., 412 So.2d 975 at 982 (La. 1982) (On Rehearing),[5] we quoted with approval the appellate court opinion as follows:

When a possessor has a title, his exercise of possession over a part of the property constitutes the exercise of constructive possession of the whole; however, when a possessor does not have a title, his claim of possession is limited in extent to that property shown by enclosures (artificial or natural boundaries) and his possession must be proved `inch by inch' so that the possessor must establish actual, physical and corporeal possession over the entire amount of land claimed in the possessory action. Stated otherwise, the possessor without title is entitled to be maintained in possession only to the extent of the boundaries within which he proved actual, physical and corporeal possession. (Citations omitted.) (Emphasis provided.)
*109 Bearing these principles in mind, we now examine the state's contention that possession of the bed and bottom of the Amite River was not shown either by title (or by title to properties on the adjoining banks with a La.C.C. art. 506 extension)[6] or by enclosures or inch by inch possession.
Titles of the riparian owners were not introduced into evidence. The riparian property in question was identified in the petition by reference to the notarial records of St. Helena and East Feliciana Parishes respectively. At trial, the plaintiffs referred to themselves as riparian landowners along the Amite River. No evidence other than these allegations of titles was introduced; the record is devoid of the titles or deeds of riparian owners. Nor do the plaintiffs suggest that because they hold title to the riparian land and because they possess portions of the bank and parts of the bed that they then possess the whole to the middle of the riverbed. Instead the plaintiffs rely entirely upon corporeal inch by inch possession of the riverbed in question.
We must therefore examine the evidence to see if the plaintiffs sufficiently proved corporeal possession of the disputed areas of riverbed. As we earlier noted, "when a possessor does not have a title, his claim of possession is limited in extent to that property shown by enclosures (artificial or natural boundaries) and his possession must be proved `inch by inch'," City of New Orleans, supra. On the meaning of the term "enclosures" relative to a possessory action, we explained further in City of New Orleans, at 412 So.2d 981:
"Enclosed" does not necessarily mean "fenced in", but does require "that the land actually, physically, and corporeally possessed by one as owner must be established with certainty, [whether] by natural or by artificial marks; that is, that they must be sufficient to give definite notice to the public and all the world of the character and extent of the possession, to identify fully the property possessed, and to fix with certainty the boundaries or limits thereof." Hill v. Richey, 221 La. 402, 59 So.2d 434 [at 441] (1952).
"[C]orporeal possession [then] ... is governed by the nature of the land and the use to which the land is put." Cheramie v. Cheramie, 391 So.2d 1126 at 1130 (La. 1980). See also Liner v. Louisiana Land and Exploration Co., 319 So.2d 766 (La. 1975) and cases cited therein at 319 So.2d 772, 773.
In this case, the nature of the land and the use to which it is put is peculiar on its facts and one of first instance for this Court.
The object of this possessory action is partially submerged land, the bed and bottom of a non-navigable river. Although non-navigable, the Amite River still carries water over its bed which presents a unique juxtaposition of private and public things. On the one hand, the bed and bottom of a non-navigable river or stream is a private thing belonging either to the riparian owners or the state (depending upon whether it was originally non-navigable or navigablesee Wemple v. Eastham, 150 La. 247, 90 So. 637 (1922)). On the other hand, the water which traverses that private bed is a public thing. ("Public things that belong to the state are such as running waters,..." La.C.C. art. 450.) As such, the riparian owner may use the running water for his purposes, but he may not interfere with, nor prevent, its use by the general public. La.C.C. arts. 657 and 658; Yiannoupoulous, 2 La.Civ.Law Treatise § 36, 99 et seq. (2d ed. 1980). Therefore the possessor of the bed, or owner for that matter, may not fence or enclose the "land" so as to impede the use of the flowing water. Moreover, there was testimony at trial from a lifelong resident of East Feliciana *110 Parish that the river would wash out any signs or monuments placed within it.
So we have here a possessory situation where the area is not subject to being enclosed in the usual sense. In a case like this we examine the evidence for recognizable boundaries within which plaintiffs have possessed, with due regard to the limitations imposed because the bed is traversed by the "public" free flowing water.
At trial the following was adduced:
Relative to possession by the East Feliciana Parish plaintiffs, five witnesses testified.
Mr. Fleniken testified that he looked after the property of plaintiff Bailey Chaney and had permission to use it for recreation, barbecues, and fishing. The Bass family likewise had permission to use the property and had posted signs on the riverbank, "Keep out. Private Property."
Bailey Chaney himself testified that he allegedly possessed to the middle of the river through recreational use of the river bottom, and several sand, gravel and mineral leases. On occasion he allegedly shared royalties with two St. Helena landowners on the other side of the river. Furthermore Chaney stated that the land was posted with signs on the bank and advertised in a local newspaper as posted private property.
Allen Thomasson of Plaquemine Sand and Gravel testified about gravel operations he allegedly conducted on several tracts along the river. As a gravel operator in the disputed area for eighteen to twenty years, he said he had never paid any royalties to the State of Louisiana nor heard of anyone's paying the state royalties on sand and gravel produced in the area. He testified also that "[w]e had been pretty careful to not get past the center of the river." Once Thomasson had a dispute with Harvell, an alleged landowner on the east bank of the river, over dredging beyond the centerline, and as a result Thomasson moved his dredge closer to the west bank of the river.
Mr. Stanley Hornsby, another alleged landowner in East Feliciana Parish, testified that he too possessed up to the centerline of the river through various sand and gravel leases. Mr. Charles Chaney, son of Otis Chaney, attested that the purported boundary of his family's property was the river's centerline. Furthermore, the Chaney's gave permission to the New Jesus Gospel Church and Bluff Creek Baptist Church to use the river in baptismal ceremonies. By joint stipulation, it was agreed that Otis Chaney would testify the same as did Charles Chaney.
Relative to possession by the St. Helena Parish plaintiffs, four witnesses testified.
James Odom, an alleged landowner on the St. Helena Parish side of the river, testified that he had possessed to the centerline of the river by virtue of numerous timber sales and various grazing, recreational, sand, gravel and mineral leases. During the inclusive time frame of three alleged sand and gravel leases, Odom said he had seen dredging barges on the river at different points.
Mr. Lea Harvell, an alleged landowner in St. Helena Parish who had his property posted, also attested to granting sand and gravel leases up to the centerline of the river, and confirmed he had made Allen Thomasson move his dredging operation back across where he believed the centerline of the river was.
Mrs. Ethel Harvell Jones, sister of Lea Harvell identified several old photos showing people wading, sitting and lying on the riverbed. By joint stipulation, it was agreed that two other witnesses to be called for plaintiff would testify the same as Mrs. Jones. Jimmy Jones, son of Holice Jones, testified that acts of possession on their alleged property included an old lease for sand and gravel to Jahncke. The property was posted and sand and gravel had allegedly been pumped to the center line. By joint stipulation it was agreed that Maurine Jones would testify the same.
Furthermore all parties stipulated that the balance of the thirty-three plaintiffs would testify the same as Stanley Hornsby, *111 James Huntington Odom, and Lea Harvell had testified.
The witness for the State Mineral Board was W.B. Watson, an environmental coordinator with the Department of Wildlife & Fisheries. As a biologist with the water pollution control division of the Department of Wildlife and Fisheries prior to its being located in the Department of Natural Resources, Watson had been responsible for monitoring the gravel operators along the Amite River from the Mississippi state line to Port Vincent, Louisiana, to assure that conservation measures were being taken to prevent degradation of the water quality of the river. At the time Watson was working, there were thirty-one gravel operators on the full length of the Amite River and he was responsible for thirteen parishes. On different occasions he would meet with gravel pumping operators to discuss how to alleviate the discharge of muddy water into the river. There were some reports of gravel pumping operations in the river in the area in dispute and about four or five years ago, in or close to the area of dispute, he did find one operator in violation of the Scenic Rivers Act.
This evidence at trial shows that the property is by nature a land surface covered with the waters of a non-navigable river. As such it is suited for mining, for fishing, for occasional baptisms by local churches, and for recreational activities including swimming, wading, digging for clams and mussels, skimming rocks, and fishing.
The plaintiffs through testimony and photo exhibits have proven their recreational use of this particular section of the Amite River, and testified about various leases over the years. Likewise the plaintiffs stated that they knew and observed boundaries among themselves, posted signs along the river banks "Keep Out. Private Property," or evicted those using the land areas without permission. Furthermore, testimony at trial established that the alleged riparian owners commonly recognized that the possession of each extended to the centerline of the river. For example, when Thomasson was asked about the boundaries of possession, he replied: "It has always been the centerline of the river, sir. Wherever the stream itself is flowing." Later on he elaborated further on how the centerline was determined. "If one took a rule and measured the area where the water is flowing and divided that by half, sir, and got to that point on that rule, I guess that would be the centerline. That is how I would define it.... [N]ormally, the river would be from as little as 10 [feet wide], and in the shallow places up to as much as 50 feet [wide], and we assume that the center of wherever this stream is flowing is the centerline of the river."
While these general assumptions concerning the centerline boundary may have been enough to keep peace among neighbors, it is not sufficient to maintain the plaintiffs as legal possessors. The corporeal possession necessary to sustain a successful possessory action "must be sufficient to give definite notice to the public and all the world of the character and extent of possession, to identify fully the property possessed and to fix with certainty the boundaries or limits thereof." City of New Orleans, supra.
The activities attested to by the plaintiffs (fishing, swimming, wading, tubing, stone skimming, digging for clams and even baptizing church members) indicate that they used parts of the riverbed at various times; however, the plaintiffs have failed to prove definitely, fully, and certainly the geographic extent of and the continuous and obvious nature of their use of the riverbed. The activities to which the plaintiffs testified are natural things done in any river or stream in the state and are not such as to give definite notice to the public and all the world that the plaintiffs were possessing the riverbed as owners rather than merely using the running waters of the state as members of the general public. Some of the plaintiffs allegedly granted sand and gravel leases for portions of the bed and bottom of the Amite River at varying times but the areas covered by the leases remain indeterminate. The leases *112 were not introduced into evidence, nor was there testimony or documentation showing the exact positions at which the mining operations were conducted.
Additionally the thread or centerline of the Amite River is not such a natural or artificial mark which gives notice to the public and the world at large of the character and extent of individual possession. The center of a river is an invisible line subject to natural changes. The disputed portion of the Amite River in this case is a meandering stream dotted irregularly with sandbars and islands, around which water moves with varying frequency and speed depending on the changing river stages. Signs placed on the river bank may, of course, attest to alleged ownership or private possession of the riverbank. Posting the riverbank may indicate to the passing tuber or canoeist that the riverbank should not be used for picnics or campfires. But such signs are not indicative to third parties that the river bed itself is private property divided co-equally at an invisible centerline between riparian owners or possessors from either side.
Furthermore, even if the thread of the river were adopted as a natural boundary, no side boundaries of the riparian properties, no cross-river indicators of enclosure or the extent of possession, were proven in this case. There was no testimony of visible marks, either artificial or natural, extending from the bank to the thread or centerline of the river. No evidence was introduced regarding any survey which delineated the boundaries or the extent of possession between the alleged neighboring riparian possessors or owners along the disputed tract. No crossboundaries were established conclusively either on the riverbank or to the thread or centerline of the river itself to give notice to the public or the world at large of the extent of the respective separate possessions of each of the adjoining riparian tract owners.
Accordingly there has been no showing of corporeal possession of the bed of the river either by enclosure by natural or artificial marks or by inch by inch possession. The plaintiffs have failed to meet their statutorily imposed burden of proof in this possessory action, and so may not succeed.

Decree
For the foregoing reasons, the judgment of the Court of Appeal upholding the district court's recognition of the right of plaintiffs' to be maintained in possession of immovable property to the thread or centerline of the Amite River, and ordering the state to file a petitory action within sixty days after judgment becomes executory, is reversed. Plaintiffs' cases are dismissed with prejudice.
REVERSED; DISMISSED.
LEMMON, J., concurs.
MARCUS, J., concurs and assigns reasons.
DIXON, C.J., concurs in result only. (See my dissent in Todd.)
MARCUS, Justice (concurring).
Based on my dissent in Todd v. State of Louisiana, through the Department of Natural Resources of the State of Louisiana, No. 82-C-2915, (La., Nov. 28, 1983), and my agreement with the majority's conclusion that plaintiffs failed to meet their statutorily imposed burden of proof in this possessory action, I respectfully concur.
NOTES
[1] In Todd v. State of Louisiana, et al., (La.1983) (No. 82-C-2915, November 28, 1983 rehearing granted, January 5, 1984), we found that a possessory action may indeed be brought against the State of Louisiana; but decided that La. C.C.P. 3662(2) [which required the trial judge upon request of the plaintiff to order the loser in a possessory action to file a petitory action within a maximum of sixty days or lose the right to challenge the ownership thereafter] was unconstitutional as applied to the state because of the prohibition in La. Const. art. 12 § 13 against the running of prescription against the state in any civil matter; and pretermitted consideration of the nature of the burden of proof the state would have in any subsequent ownership litigation.
[2] The area in dispute traverses Sections 44, 46, 50, 51, 56 and 57 of T-3-S, R-4-E, St. Helena Parish; and Sections 43, 45, 52 and 53, T-3-S, R-4-S, East Feliciana Parish. The Amite River throughout its course as well as in the area of dispute, runs roughly north to south and is the dividing line between St. Helena and East Feliciana Parishes.
[3] Wemple v. Eastham, 150 La. 247, 90 So. 637 (1922); Amite Gravel and Sand Co. v. Roseland Gravel Co., 148 La. 704, 87 So. 718 (1921); A. Yiannoupoulous, 2 La.Civ.Law Treatise § 46, 130 et seq. (2d ed. 1980).
[4] Note that in Todd we found that the sixty day period was unconstitutional as applied to the state. See note 1, supra.
[5] In the City of New Orleans v. New Orleans Canal, Inc., 412 So.2d 975 (La.1982), the property in dispute was a 40' wide strip of flat, open, undeveloped "neutral ground" in the City of New Orleans. The City claimed possession of the 40' tract through construction and repair of streets, mowing the grass, and picking up trash. On rehearing, 412 So.2d 981 (La.1982), the Court decided that the City failed to establish the extent of its claim, given the nature of the property involved. The strip claimed was unenclosed with no determinable boundaries, being entirely indistinguishable from the adjacent grassy right of way on the one side and from the two open unoccupied strips on the other, owned respectively by New Orleans Canal, Inc. and by the state.
[6] La.C.C. art. 506 provides: "In the absence of title or prescription, the beds of nonnavigable rivers or streams belong to the riparian owners along a line drawn in the middle of the bed." Accord Wemple v. Eastham, 150 La. 247, 90 So. 637 (1922); Amite Gravel & Sand Co. v. Roseland Gravel Co., 148 La. 704, 87 So. 718 (1921).