COREIL, Judge Pro Tem.
In this criminal matter, we are presented by this writ with the issue of whether a certain portion of land located within the Atchafalaya Basin ecological system is part of the bank of the Atchafalaya River and whether flood waters over privately owned lands may become subject to public use. This Court granted the application and ordered the matter docketed for briefing and oral argument. We now issue a written opinion, affirm the ruling of the trial court, and deny the writ.
FACTS
Defendants, Joey Barras and Kip Barras, were crawfishing in the Atchafalaya Basin when each was orally forbidden to remain in those lands owned by Williams, Inc. Utilizing canals and pipeline rights-of-way, the defendants gained access to the Williams’ property by boat for the purpose of conducting their own commercial fishing operations. On several occasions, defendants were advised that they were on private property and asked to leave. The defendants ignored the warning and continued to actively engage in commercial craw-fish harvesting. Subsequently, charges were brought against the pair and both were convicted of violating La.R.S. 14:63.3, Entry on or Remaining in a Place or on Land After Being Forbidden.
Seeking to reverse their convictions, defendants contend this land constitutes the bank of the Atchafalaya River and, as such, under the authority of La.C.C. art. 456, they had a legal right to fish from *303 water covering areas in the Atchafalaya River Basin.[1]
Defendants also argue that the waters are part of a yearly spring rise of the Atchafalaya River and, as such, constitute “running waters” under La.C.C. art. 450 and are therefore “public things” subject to public use.[2]
The land in question lies within the At-chafalaya Basin within Iberia Parish, which is part of the Atchafalaya Basin ecological system located within the Atchafalaya Basin levees. This tract of land is approximately 649 acres, of which about 600 acres lie east of the west guide levee of the Atchafalaya River.
Williams, Inc. is the owner of the land which is located in Section 27, Township 12 South, Range 9 East. The property is located four to five miles west of the Ateha-falaya River and is accessible by boat, only through a series of man-made canals. Only certain portions of the total acreage may become covered by backwaters from the Atchafalaya River. Testimony indicated that cottonwood trees and sycamore trees are found within the acreage. Cottonwood trees and sycamore trees are typically found on elevated properties not subject to inundation.
1. Is the land area in question part of the bank of the Atchafalaya River?
The trial court supplied excellent reasons for ruling that the land in question does not form part of the bank of the Atchafalaya River, and thus finding the defendants guilty of violating La.R.S. 14:63.3. We therefore agree with the trial court’s well-reasoned opinion and quote from that opinion in pertinent part:
“There is no question but that both of the defendants were warned by authorized persons and told not to come back, and they did.
“So, unless a defense applies, the elements of the crime, as set forth in Section 63.3, have been proven beyond a reasonable doubt.
“Now, the defendants rely on Article 456 of the Civil Code as a defense, in which they say, notwithstanding that the elements of the statute have been met, they are exempt from that statute because the public has an easement over the property in question. Article 456 says that the banks of navigable rivers or streams are private things that are subject to public use. The key words, of course, are the banks, navigable rivers, and then the banks being private things subject to public use.
“There’s no question, of course, but that the Atchafalaya River is a navigable river. The article goes on to say that the bank of a navigable river or stream is the land lying between the ordinary low and the ordinary high stage of the water. Nevertheless, when there is a levee in proximity to the water established according to law, the levee shall form the bank.
“As I understand the defense contention, they are saying that the Atchafala-ya River principally, if not entirely through its distributaries, deposits water which is being carried from the north, flood waters, into the property in question, Section 27, through this system of distributaries and overflows in some areas; and that, consequently, over this land in question is water which has its source in the Atchafalaya River; and *304 because of that flow of water away from the river itself, that all of this area that becomes inundated with the flood waters is part of the bank of the Atchafalaya River because it is below the high water mark and above the low water mark, the definition of the bank; and that either that or perhaps in conjunction with that is the argument that the west guide levee of the Atchafalaya River, being in proximity to the water, forms part of the bank, and that the bank would then include the levee; and that being the case, that these areas in question are subject to a servitude in favor of the public, although admittedly privately owned.
“Of course, as a conclusion of fact, there is also no question but that the defendants limited their activity on this property to crawfishing and using boats and not walking on the land or that sort of thing.
“I am not persuaded by that defense. The evidence is that the Atchafalaya River itself is over four miles, maybe five miles, away from the west guide levee. Certainly, in the ordinary sense of things and the ordinary definition of things, that four to five mile distance cannot, in my view, be construed as being in proximity to the river.
“Now, obviously, Article 456 was not intended by the legislature to include all levees which contained the flow of waters in rivers and streams. If it did — if that were the intent of the legislature, the words, “in proximity to the water”, would not have to be included. The official comments under Article 456 make it clear that it is not intended that all levees be included in this definition, only those which are close to the water. Now, the water obviously means the water in the river itself and not all of this flood water which extends for acres and acres and miles from the river itself. This Court can take judicial notice that the Atchafa-laya River itself, except where there are cuts and distributaries, has land which contains its immediate waters. I know that for a fact, that there is land that is higher than the water at all times right adjacent to the main stream. That, I am satisfied, is what the legislature intends to classify as the bank: that land on the incline toward the water from the ground on either side where the low water mark is and where the high water mark is, not lands on the other side, because then there would be no limit to the definition of what a bank of a river is.
“We have to bear in mind also the intent of the legislature in creating a public servitude on the banks of navigable rivers and streams. The reason is historic and it goes back to the old days when the streams and rivers were a major source of commerce and boat traffic was common up and down the bayous and the rivers of this State, more so than it was on the highways, which were largely undeveloped in those days; and that it was necessary that the traffic on the navigable streams could have access to the banks for various reasons: in case of ship wreck, to dry nets, to rest from the waters, and that sort of thing. That’s why that easement was created. And the Supreme Court of this State, way back in 1916, in the case of State versus Richardson, which is reported at 72 So. 984, recognized that the easement created by Article 456 in favor of the public was not for all purposes but merely for purposes that are incidental to the navigable character of the stream and its enjoyment as an avenue of commerce. The key words there are navigable and commerce, having to do with the uses for which the navigable stream was put. That is the purpose of the servitude. Obviously, it was intended for use on the immediate high ground, the banks adjoining the navigable streams.
“For those reasons, and considering, as I say, the everyday common definition of what a bank of a river is, I am not persuaded by the defense argument that the property in question where the defendants were crawfishing was the bank of .the Atchafalaya River. And, consequently, the elements of the statute having been met, I must find them guilty as charged.”
*305 2. Are the flood waters public things subject to public use?
We refuse to interpret Louisiana law in the manner suggested by the defendants. There is no general right of use conferred upon the public to access to private lands by virtue of the overflow waters from a navigable body of water.
We direct attention to a case decided by the Second Circuit entitled Edmiston v. Wood, 566 So2d 673 (La.App. 2 Cir.1990), and cases cited therein. In Edmiston, a case involving similarly situated lands and similar issues, the defendants, owner and lessor of lands that became inundated periodically from backwaters of the Mississippi, were allowed to post the property against trespassers and to prevent individuals from navigating their vessels over that property when neighboring navigable bodies of water overflow their natural bed and bottoms and cover the defendants’ land. Our brethren, in a well-reasoned opinion, determined that hunting and fishing the adjacent overflow lands are not for a purpose that is incidental to the navigable character of the stream and its enjoyment as an avenue of commerce. The court further determined, as we do here, that this type of land area does not constitute a bank and is therefore not subject to public use in accordance with La.C.C. art. 456.
Defendants cite and rely on Chaney v. State Mineral Board, 444 So.2d 105 (La.1983), for their proposition that a landowner cannot prohibit entry by force of law because such prohibition destroys the public’s right to fish on the running waters or the waters overlaying the banks of navigable streams. However, Chaney is factually distinguishable from this case. Chaney involved a possessory action against the State. The court in Chaney drew a distinction between the running water as a public thing, and the bottom of a non-navigable stream, which was a private thing, only for the purpose of determining what acts of man may suffice as acts of possession of the bed. The land area at issue was by nature a land surface covered with water — it was part of the Amite River. The case did not involve lands temporarily inundated by overflow waters from a navigable waterbody located over four miles away.
In summary, defendants have no jurisprudential or codal support for their contentions. Finding no error, we affirm the trial court’s ruling. Accordingly, the convictions of Kip Barras and Joey Barras are affirmed.
WRIT DENIED.

. "Art. 456. Banks of navigable rivers or streams
The banks of navigable rivers or streams are private things that are subject to public use.
The bank of a navigable river or stream is the land lying between the ordinary low and the ordinary high stage of the water. Nevertheless, when there is a levee in proximity to the water, established according to law, the levee shall form the bank.
Acts 1978, No. 728, § 1."

. “Art. 450. Public things
Public things are owned by the state or its political subdivisions in their capacity as public persons.
Public things that belong to the state are such as running waters, the waters and bottoms of natural navigable water bodies, the territorial sea, and the seashore.
Public things that may belong to political subdivisions of the state are such as streets and public squares.
Acts 1978, No. 728, § 1.”