Judgment rendered November 15, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,296-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

KATIE KING ALSTON                Plaintiff-Appellee

versus

BETTY JEAN MOORE              Defendant-Appellant

* * * * *

Appealed from the
Thirty-Seventh Judicial District Court for the
Parish of Caldwell, Louisiana
Trial Court No. 30205

Honorable Ashley P. Thomas, Judge

* * * * *

| | |
|---|---|
| ROBERT ANDREW MOORE | Counsel for Appellants Betty Jean Moore and Howard Moore Family Trust |
| MIXON, CARROLL & FRAZIER, LLC<br>By: James Eugene Mixon | Counsel for Appellee |

* * * * *

Before PITMAN, HUNTER, and MARCOTTE, JJ.

MARCOTTE, J.

This appeal arises from the 37th Judicial District Court, Parish of Caldwell, the Honorable Ashley Paul Thomas presiding.  Defendants, Betty Jean Moore and the Howard Moore Family Trust, appeal the trial court's judgment rendered in favor of plaintiff, Katie King Alston, declaring her the owner of a tract of immovable property through acquisitive prescription. For the following reasons, we affirm the judgment of the trial court.

**FACTS AND PROCEDURAL HISTORY**

On August 18, 2021, Katie King Alston ("Alston") filed a petition to establish title through acquisitive prescription.  She named as defendant Betty Jean Moore ("Betty"), individually, and as the independent administratrix of the succession of Robert Howard Moore ("Robert"), Betty's husband (collectively, "the Moores").  The petition alleged that the Moores were the record owners of an approximately one-acre tract of immovable property located in Caldwell Parish, Louisiana; Alston provided a description of the property in the petition.[1]  The property at issue, 128 Holman Road, Columbia, Louisiana, was a part of a larger piece of immovable property owned by the Moores.

Alston alleged that her family had begun possessing the property over 70 years before and that she had sole possession of the property as the owner for a period of time exceeding 30 years.  Alston asked that the trial court declare her the owner of the property described.  Defendants answered,

_____

[1] It was later revealed at trial that the property description included in the petition described a different piece of property and not the tract at issue.  The petition was amended at trial to include the correct property description.

denied Alston's claims, and asked the trial court to evict Alston from the property.

On October 10, 2022, a bench trial was held. At the beginning of the trial, defense counsel stated that Robert and Betty acquired the disputed property in 2014. Robert died in 2019 and his succession was closed by the time of trial. Robert created the Howard Moore Family Trust in his will, naming his and Betty's children, Donald Glen Moore ("Don") and Martha Moore Reynolds ("Martha"), as trustees; the trust was recognized in the succession proceedings. Don and Martha held power of attorney for Betty, their mother.[2] Martha executed a concurrence, granting Don authority to act as her sole mandatary in the suit against Alston. By joint stipulation, the parties added as defendants the Howard Moore Family Trust and Don Moore, as trustee.

Alston testified that she had lived near the disputed property since 1951. Photographs from before 1975 were admitted, which depicted her family, a single-wide trailer, and Holman Road. Alston originally lived across Holman Road in a trailer on a different piece of property from the tract at issue here.

Alston testified that she got permission from her godfather, J.S. Holman ("Holman"), who had a house on the property and who she presumed owned the property, to put her trailer "in that old pea field" on the property, at 128 Holman Road. Alston placed a mobile home on the property in 1982 and moved onto the land as owner at that time; the mobile home has remained on the property since. She lived there from that time and

---

[2] Betty was 91 or 92 years old at the time of trial.

mowed the grass on the property. No one told Alston that she had to leave the property, move her home, or that she could not be there. A photograph was admitted depicting Alston and her infant son on the property in 1982, the year he was born, with her mobile home in the background. Other photographs were admitted which were taken in 1995 and 1998, showing Alston's mobile home on the property. Alston received a homestead exemption on the property.

Alston stated that Holman did not give her a deed to the property, but she assumed she was the owner when he told her she could move in and stay there. Holman was retired in 1982 when he gave her the property, and he passed away in 1989 or 1990. Alston said that apart from mowing part of the property, she did not put up any signs, paint any trees, or put up a fence to mark the boundaries of the property, and she did not have a survey done of the property. She affirmed that she could not identify the exact acreage over which she was claiming ownership. Alston possessed the property for herself and no one else, and she mowed around the property up to the tree line.

Alston's brother, James Earl King ("Mr. King"), testified that Alston moved a double-wide mobile home onto the Holman Road property and no one other than his sister possessed the property. Mr. King said that Alston mowed the yard and that the part of the property she possessed was visible.

Betty King ("Mrs. King"), Mr. King's spouse, testified that Alston put a mobile home on the property more than 30 years before the trial. She maintained the yard around the property and no one interfered with her possession of the property. Mrs. King saw Alston about once a month.

3

Scott Meredith ("Meredith"), the Assessor for Caldwell Parish, testified. A copy of an Assessment Sheet for Alston's mobile home was admitted, and it stated that the home was on 128 Holman Road and was "located on Manville Property." Meredith stated that he prepared a description of the property that Alston was possessing, which was used in the petition. He based his description upon a visual examination of the property and aerial photographs. The description was admitted. Meredith stated that prior to becoming the parish assessor, he assessed the property for an oil and gas company, Hogan Exploration ("Hogan"), which had a lease on the property from the owner, "the Manville Companies." Meredith testified that Hogan leased the property from the 1980s to 2000. When Meredith viewed the property in the 1980s, Alston was living on it in a mobile home and was occupying it as her home. Meredith said that the property was owned at the time by "Plum Creek or Manville."

On cross-examination, Meredith clarified that he only assessed the mobile home to Alston, but the land the mobile home sat upon was assessed to the Moores. The Assessment Sheet for the mobile home excluded "land value." Meredith affirmed that the property description provided in the petition was inaccurate, as it listed the property as being on Elmo May Road. Defendants then had admitted the correct legal description of the property prepared by Meredith. He measured the property from aerial photographs, but did not take ground measurements of the property. Meredith stated that his measurements were approximate and not exact and he did not prepare a survey for the tract of land.

Plaintiff stipulated that the incorrect property description was attached to the petition, and the petition was amended to reflect the correct

4

description. Meredith stated that he provided a general estimate of feet and direction in the property description and a surveyor could provide a metes and bounds description. Plaintiff rested.

Dustin Reynolds ("Reynolds") testified for the defense; at the time of trial, he was employed by the Webster Parish Sheriff's Office as the Chief of Operations, and was a relative of defendants. Reynolds stated that he visited the property at issue two to three times in the year prior to trial and he evaluated the property, looking at the "boundaries or lack thereof." Defendants had admitted photographs Reynolds took of the property showing Holman Road, a purported boundary of the property, and a mobile home and mailbox. Additional photographs Reynolds took of the property were admitted, which depicted various angles of the property and showed mow lines. Reynolds stated that there were no features, vegetation, signs, or fences, etc., to show any sort of boundary line to the property at issue, nothing that would indicate Alston was claiming ownership of the property.

Reynolds stated that he was able to determine the parameters of the land that Alston was mowing by the length of the grass; he agreed that it was easy to determine, upon viewing the property, which part Alston occupied. Reynolds said that he was not aware of anything the Moores did to maintain the property and that he thought Alston mowing the grass was part of an agreement she had with them. Reynolds stated that the Moore family had never occupied the residence on the property. He testified that a sewer line running from Alston's home, which was depicted in one of the photographs, was not something the Moores were using; the sewer line came from Alston's mobile home and emptied into a septic pit that was not on the property Alston was claiming.

Don testified that he went to Caldwell Parish more than two dozen times to view the Holman Road property. He said that Betty, the family trust, and other relatives paid taxes, cut trees, bush hogged, fished the pond, and hunted on the Holman Road property, but not the part of the property that Alston maintained. Don stated that his family never saw fences or signs, or received notice indicating that Alston claimed ownership of the property. He acknowledged that there was a mobile home on the property, part of the property was regularly mowed and maintained, and there was a sewage line running from the mobile home to a septic pit. When the Moores purchased the property, they were aware Alston was living there, and Don was present one time that they visited her on the property. The defense rested.

The trial court then provided an oral ruling. The trial court found that Alston had acquired the land she occupied through acquisitive prescription and that she had corporeal possession of the property from 1982 to 2012. The court stated that Alston was not a precarious possessor. The trial court found Meredith's description of the property that was included in the amended petition sufficient to describe the property that Alston possessed. Defendants objected.

On November 3, 2022, the trial court signed a written judgment declaring Alston to be the owner of the following described property:

> From NW/4 of Section 25, T13N, R3E; thence East
> approximately 1,000 feet to the centerline of La. Hwy. 4; thence
> Southeasterly approximately 900 feet along the centerline of
> La. Hwy. 4 with its intersection with Holman Road; thence
> Northeasterly approximately 225 feet along the centerline of
> Holman Road to the Point of Beginning; thence continue
> Northeasterly 300 feet along the centerline of Holman Road;
> thence Southeasterly (at right angle) 220 feet; thence
> Southwesterly (at right angle) 300 feet; thence Northwesterly

6

(at right angle) 220 feet to the Point of Beginning. All as depicted on Exhibit P-8 introduced into evidence in these proceedings and attached hereto.[3]

Defendants now appeal.

## DISCUSSION

*Extent of Possession*

In their first assignment of error, appellants argue that it is impossible to discern the boundaries of the property Alston possessed other than the area where she mowed the yard. Appellants claim that Meredith's description of the property is inadequate, because he did not perform ground measurements, but rather mapped out the property line using aerial photographs. Appellants state that a surveyor is required here to determine with specificity Alston's inch-by-inch possession within enclosures, but, under the law, the description cannot be corrected post-judgment. Appellants contend that testimony at trial established that two of the purported boundaries were allegedly set by the existence of a tree line and Alston mowing grass, but such evidence lacks the specificity the law requires.

Appellee argues that it is undisputed that Alston moved her mobile home onto the property in question in 1982 and preserved the property by mowing the grass and maintaining the premises for more than 30 years. Appellee contends that she possessed the property for herself and no other. Meredith viewed the property on more than one occasion with Alston living there. Appellee states that the current law has a relaxed view of

_____

[3] Exhibit P-8 is an aerial photograph of the Holman Road property with Alston's property outlined in yellow.

7

"enclosures" for the purposes of delineating property lines. A survey is not required to determine the extent of Alston's ownership, because the description provided by Meredith used monuments to establish and describe the location of her property. Appellee argues that while possession must be proved inch-by-inch, there is no requirement in the law that the description of the property must be to the inch.

Ownership and other real rights in immovables may be acquired by the prescription of 30 years without the need of just title or possession in good faith. La. C.C. art. 3486. For purposes of acquisitive prescription without title, possession extends only to that property which has been actually possessed. La. C.C. art. 3487. Actual possession must be either inch-by-inch possession or possession within enclosures. *Pinola Pres., L.L.C. v. Star B Ranch, L.L.C.*, 53,823 (La. App. 2 Cir. 4/14/21), 361 So. 3d 991, *writ denied*, 21-00861 (La. 10/12/21), 325 So. 3d 1069. An enclosure is any natural or artificial boundary. La. C.C. art. 3426, comment (d). The party who does not hold title to the disputed property has the burden of proving actual possession within enclosures sufficient to establish the limits of possession with certainty, by either natural or artificial marks, giving notice to the world of the extent of possession exercised. *Pinola Pres., L.L.C. v. Star B Ranch, L.L.C.*, *supra*.

The possessor must have corporeal possession, or civil possession preceded by corporeal possession, to acquire a thing by prescription, and the possession must be continuous, uninterrupted, peaceable, public, and unequivocal. La. C.C. art. 3476.

To acquire possession, one must intend to possess as owner and take corporeal possession of the thing. La. C.C. art. 3424. Corporeal possession

8

is the exercise of physical acts of use, detention, or enjoyment over a thing. La. C.C. art. 3425. Possession may be exercised by the possessor or by another who holds the thing for him and in his name. La. C.C. art. 3429. Thus, a lessor possesses through his lessee. A precarious possessor, such as a lessee, is presumed to possess for another although he may intend to possess for himself. La. C.C. art. 3438.

The requisite possession to support a possessory action is identical to the possession required to commence the running of acquisitive prescription. *Pinola Pres., L.L.C. v. Star B Ranch, L.L.C.*, *supra*. The question of whether acts constitute possession is a factual determination that will not be disturbed on appeal absent manifest error. *Strain v. Aaron*, 49,647 (La. App. 2 Cir. 2/27/15), 162 So. 3d 553.

When one party relies on title and the other party on acquisitive prescription, the party relying on title will prevail unless the adversary establishes his ownership by acquisitive prescription. *Pinola Pres., L.L.C. v. Star B Ranch, L.L.C.*, *supra*; *Bowman v. Blankenship*, 34,558 (La. App. 2 Cir. 4/4/01), 785 So. 2d 134, *writ denied*, 01-1354 (La. 6/22/01), 794 So. 2d 794.

Appellants rely on the following cases in support of their argument that the evidence was insufficient to determine the boundaries of the property Alston possessed: *Chaney v. State Mineral Bd.*, 444 So. 2d 105 (La. 1983) and *Leonard v. Meraux Land Dev., LLC*, 02-0863 (La. App. 4 Cir. 2/26/03), 840 So. 2d 1238, *writ denied*, 03-0854 (La. 5/30/03), 845 So. 2d 1055.

In *Chaney v. State Mineral Bd.*, *supra*, a group of riparian land owners filed a possessory action against the Louisiana State Mineral Board,

9

claiming they had possessed the riverbed of the Amite River to the centerline of the river. The supreme court determined that the land owners were required to prove possession by enclosures, meaning that they maintained possession only to the extent of the boundaries within which they proved actual, physical, and corporeal possession. *Id.*

The supreme court noted that it was a unique case, because the immovable property at issue was partially submerged land, the bed and bottom of a non-navigable river that still carried running water. Because running water is a public thing, a riparian land owner may not interfere with its use by the general public. Therefore, the supreme court said, the possessor of the riverbed could not fence or enclose the land so as to impede the flowing water's use. There was also testimony at trial that the Amite River would wash out any signs or monuments placed within. *Id.*

Several of the property owners testified that they posted signs which said "Keep Out. Private Property," evicted those using the land without permission, and advertised in the local newspaper that the area was private property. They testified about sand and gravel dredging operations that were conducted on the riverbed to the centerline and the recreational and other activities for which the Amite was used, including wading, fishing, skimming rocks, digging for clams, and baptisms. The owners commonly recognized that the possession of each extended to the centerline of the river, which they described as the midway point between the edges of the flowing water. *Id.*

The supreme court found that the plaintiffs had not met their burden of proving that they were the legal possessors of the riverbed. The court said that the use to which the plaintiffs put the riverbed was insufficient "to give

definite notice to the public … of the character and extent of possession, to identify fully the property possessed and to fix with certainty the boundaries or limits thereof." *Id.* at 111. The court went on to state that the activities to which the plaintiffs testified were natural things done in any river in the state and did not give definite notice to the public that they were possessing the riverbed as owners rather than the general public using the running waters of the state as members of the general public. The court also found that the centerline of the Amite River was an invisible line subject to natural change, and that the river was a meandering stream dotted irregularly with sandbars and islands, around which water moved with varying frequency and speed depending upon the changing river stages. *Chaney v. State Mineral Bd., supra.*

The court said that posting signs was inadequate to show third parties that the river bed itself was private property divided co-equally at an invisible centerline between riparian land owners from either side. The court finally said:

> Furthermore, even if the thread of the river were adopted as a natural boundary, no side boundaries of the riparian properties, no cross-river indicators of enclosure or the extent of possession, were proven in this case. There was no testimony of visible marks, either artificial or natural, extending from the bank to the thread or centerline of the river. No evidence was introduced regarding any survey which delineated the boundaries or the extent of possession between the alleged neighboring riparian possessors or owners along the disputed tract. No cross-boundaries were established conclusively either on the riverbank or to the thread or centerline of the river itself to give notice to the public or the world at large of the extent of the respective separate possessions of each of the adjoining riparian tract owners.
>
> Accordingly, there has been no showing of corporeal possession of the bed of the river either by enclosure by natural or artificial marks or by inch by inch possession.

11

*Id.* at 112.

In *Leonard v. Meraux Land Dev., supra*, the plaintiffs, who were brothers, claimed possession of riparian land beside two bayous to which they purchased title in 1955. The acts of sale did not include descriptions of the properties. The plaintiffs claimed they made improvements to the properties by constructing wharfs around an existing boat shed, inserting pilings, and building a boat hoist, pier, and bulkheads. Plaintiffs stored pilings on the properties and began to operate a commercial fishing business, which later included a boat launch and convenience store. They also constructed a paved road for access to the properties. The plaintiffs testified that they did not erect any type of structure to outline the boundaries of the properties, but testified that a natural boundary line existed. *Id.*

The trial court found that the plaintiffs had acquired the land by acquisitive prescription of 30 years. The trial court ordered a survey be conducted post-judgment to fix the property lines to the bayous' edges. The court of appeal reversed, finding that the plaintiffs were unable to show a visible boundary line existed to establish what land along the bayous they actually possessed. The plaintiffs did not testify where any of the improvements they constructed were located on the bayous, or "if any of them constituted the sort of boundary contemplated by the Civil Code articles and related jurisprudence. There is only a vague reference that the improvements were located on the bayou lots." *Id.* at 1245.

The court found that the plaintiff's testimony lacked specificity regarding where the improvements were made at any particular point in time and that it was impossible to determine from the record if the improvements made were so obvious as to put anyone on notice that they possessed the

12

bayou lots as owners. *Leonard v. Meraux Land Dev., supra.* The court of appeal also found that the trial court erred by ordering a survey post-judgment to determine the boundaries possessed by the plaintiffs, stating that they should have submitted a survey or have been able to establish inch-by-inch the land possessed with specificity. *Id.*

This court finds the following case instructive: *Beals v. New Fellowship Missionary Baptist Church of Delhi, Inc.*, 51,868 (La. App. 2 Cir. 2/28/18), 246 So. 3d 701. In that case, the defendant church claimed ownership by acquisitive prescription of a strip of land located within a tract of land owned by the plaintiffs. The trial court ruled that the church acquired ownership of the disputed land through 30 years' acquisitive prescription, and this court affirmed the trial court's ruling on appeal. This court first stated that there were painted stakes placed in certain corners of the church's property. This court then found that witness testimony established that a wall of the church, its bathrooms, and septic tank had been in place on the disputed land for more than 30 years. This court added:

> Most importantly, it was clear from the record that the church had been mowing and maintaining the disputed property for more than 30 years. The wall, indoor plumbing, and *natural boundary created by mowing* gave notice of the character and extent of New Fellowship's adverse possession. It is clear from the testimony at trial that New Fellowship possessed the property without interruption, within visible bounds, more land than their title called for, and the boundary should be fixed along these bounds. (Emphasis added).

In the instant case, testimony shows that Alston moved her home onto the Holman Road property more than 30 years prior to when defendants acquired title to the land. Her septic line runs across the property, and witnesses testified that it was apparent where she mowed the grass, which she stated she had done since she moved into her home in 1982.

Defendants' reliance on *Chaney v. State Mineral Bd., supra*, and *Leonard v. Meraux Land Dev., supra*, is misplaced.  In *Chaney v. State Mineral Bd., supra*, the landowners sought by acquisitive prescription a riverbed that had flowing water running through it.  The supreme court found that (1) the riverbed was subject to constant change; (2) there were multiple landowners who did not state with adequate specificity where the boundary lines between their properties were and the extent of their possession; and (3) the activities the landowners engaged in on the land were insufficient to provide notice to the public of their possession as owners rather than the general public using the running water recreationally.  In *Leonard v. Meraux Land Dev., supra*, the plaintiffs made improvements to the properties, but the court of appeal determined that they were incapable of showing that a detectable boundary line existed in order to ascertain what land along the bayous they truly possessed.

Here, Alston is a single property owner claiming ownership of land that is not subject to change as is a flowing river.  She also did not testify that she only made improvements to the property.  Alston stated that she placed a house and septic line on the property and mowed the area around her property since she first moved there in 1982.  Meredith, Don, and Reynolds testified that the area where the grass was mowed was discernible.  The presence of her home, the septic line, and visible boundary shown by the mowed grass are sufficient to show that she possessed the property without interruption for 30 years and to give definite notice to the public of the character and extent of her possession, identifying fully the property she possessed.  This assignment of error lacks merit.

*Property Description*

In their second assignment of error, appellants argue that the trial court's judgment included a legal description of the property that did not comply with La. C.C.P. art. 2089, because it did not describe the property with particularity. Appellants claim that the judgment only provided a general description made from aerial measurements inside a tree line view, without ground measurement, used the word "approximately" three times, and "measures direction 'Southeasterly' and 'Northeasterly' six times, with absolutely no degree of measurement particularity." Appellants ask this court to reverse the trial court and dismiss Alston's demands with prejudice at her cost.

Appellee contends that the parties acknowledged that the extent of Alston's possession was evident by a visual examination of the property. Meredith used a visual examination to prepare a legal description to reflect the area occupied by Alston. Appellee states that La. C.C.P. art. 2089 does not require that a property description be supported by a survey, but only requires that immovable property be described in a manner that one can determine the location of the same. Appellee states that the requirement from La. C.C.P. art 2089, that judgments affecting title to immovable property describe the affected property with particularity, serves to assure the general public, title examiners, successful litigants, officials charged with the execution of judgments, and surveyors, who actively deal with immovable property. Appellee states that the property description found in the judgment is adequate to determine the location of the property and the trial court's ruling should be affirmed.

La. C.C.P. art. 1919 states that all final judgments which affect title to immovable property shall describe the immovable property affected with particularity. La. C.C.P. art. 2089 states that all judgments and decrees which affect title to immovable property shall describe with particularity the immovable property affected. The judgment must include the legal description of a property, with reference to landmarks such as roads, benchmarks, or other monuments which can be located, or a survey commencing at some established point. *Young v. Tolintino*, 44,631 (La. App. 2 Cir. 12/2/09), 26 So. 3d 835, *writ denied*, 10-0005 (La. 4/9/10), 31 So. 3d 391.

The purpose of describing immovable property with particularity is to assure that the general public, title examiners, successful litigants, officials charged with executions of judgments, and surveyors in particular can accurately deal with the immovable property. *Burch v. Burch*, 51,780 (La. App. 2 Cir. 1/10/18), 245 So. 3d 1138. The failure to describe a property, however, does not nullify or affect the judgment rendered. *Hooper v. Hero Lands Co.*, 15-0929 (La. App. 4 Cir. 3/30/16), 216 So. 3d 965, *writ denied*, 16-0971 (La. 9/16/16), 206 So. 3d 205.

Appellants complain that the legal description of the property uses the word "approximately" twice, which they argue does not comply with the particularity requirement of La. C.C.P. arts. 1919 and 2089. The term "approximate" means "close to the actual, but not completely accurate or exact." The first time "approximately" is used in the legal description of Alston's property is when it states that the centerline of La. Hwy 4 is "approximately 1,000 feet" from the northwest quarter of Section 25, Township 13 North, Range 3 East. The use of the word "approximately"

there is of no consequence, because the description goes on to describe the intersection of the centerlines of La. Hwy. 4 and Holman Road, which is a fixed point.

The description then states that from the intersection of the centerlines of those two roads, the "Point of Beginning" is located "Northeasterly approximately 225 feet along the centerline of Holman Road." That is the starting point from which the description outlines the boundaries of Alston's property.[4] The use of the word "approximately" means that the Point of Beginning is close to 225 feet, but not exactly 225 feet along the centerline of Holman Road. However, the legal description in the judgment references Plaintiff's Exhibit P-8, which is an assessor's map with Alston's property outlined in yellow. We find that the public, litigants, title examiners, officials charged with executions of judgments, and surveyors can read the property description provided in the judgment and review the attached assessor's map and accurately deal with the immovable property. *See Hall Ponderosa, LLC v. State Through La. State Land Office*, 54,678 (La. App. 2 Cir. 8/10/22), 345 So. 3d 537, *writ denied*, 22-01550 (La. 1/11/23), 352 So. 3d 984. This assignment of error lacks merit.

## CONCLUSION

The judgment of the trial court is affirmed. All costs are assessed to appellants.

**AFFIRMED.**

---

[4] Appellants also complain that the description of the boundaries of Alston's property includes use of the words "Northeasterly," "Southeasterly," "Southwesterly," and "Northwesterly," which in appellants' view is not specific enough. We disagree. The description of the boundaries of Alston's property also includes the words "at right angle" three times with measurements in feet. A right angle is 90 degrees exactly; therefore, the description of the boundaries of Alston's property describe the immovable property with particularity.

17