412 So.2d 975 (1981)
CITY OF NEW ORLEANS
v.
NEW ORLEANS CANAL, INC., et al.
No. 66860.
Supreme Court of Louisiana.
October 16, 1981.
On Rehearing March 1, 1982.
Rehearing Denied April 30, 1982.
William J. Wegmann, William J. Wegmann, Jr., of Law Office of William J. Wegmann, New Orleans, for defendants-applicants, A.N. Yiannopoulos, Baton Rouge, of counsel.
Salvador Anzelmo, Acting City Atty., Jack P. Panno, Asst. City Atty., John F. Fox, Jr., New Orleans, Amicus Curiae, for plaintiff-respondent.
WATSON, Justice.[*]
This is a possessory action in which plaintiff, the City of New Orleans, contends that *976 defendants[1] have disturbed its possession of certain real property. LSA-C.C. art. 3455.[2] A trial court judgment in favor of the City of New Orleans was amended and affirmed. City of New Orleans v. New Orleans Canal, 378 So.2d 995 (La.App. 4 Cir. 1979). A writ was granted to review the judgment of the Court of Appeal, 381 So.2d 1221 (La., 1980).

FACTS
The strip of property in dispute is forty feet wide and approximately 7,200 feet long. It is bounded on the south by Polk Avenue and on the north by Robert E. Lee Boulevard. On the east is the right-of-way of West End Boulevard. On the west there is a sixty foot wide strip of land which belongs to New Orleans Canal, Inc., a defendant. There is no line of demarcation between the forty foot and sixty foot strips. Between the sixty foot strip and Pontchartrain Boulevard lies a tract of land two hundred and forty feet wide which belongs to the State of Louisiana. The area between West End and Pontchartrain Boulevards is vacant. The City has mowed the grass and picked up the trash, thereby maintaining it as a neutral zone. The City has also installed cross streets, sewerage and utility lines between the two boulevards. The Court of Appeal concluded that the City's maintenance of the entire area established possession of the lesser included forty foot strip.

ISSUE
The two-point issue is whether the City: (1) intended to possess the property as owner; and (2) exercised corporeal possession. LSA-C.C. art. 3436.[3]

CONCLUSION
A municipality has the right to expropriate private property for a public purpose after payment of just compensation to the owner. Art. 1, Section 4, Louisiana Constitution of 1974. However, possession is frequently a matter of fact rather than right. LSA-C.C. art. 3450.[4] A private corporation may acquire possession through the agency of those administering its affairs. LSA-C.C. art. 3440.[5] Similarly, a municipality can be a bad faith possessor of property without having any color of title. LSA-C.C. art. 3452.[6] The question of ownership is not at issue in a possessory action. LSA-C.C. art. 3455, supra. Since ownership is not being decided, defendants' property is not being "taken". There is no violation of the constitutional protections extended to private property.
*977 Defendants contend that this suit, filed in 1964, is governed by the St. Julien doctrine. St. Julien v. Morgan Louisiana & Texas Railroad Co., 35 La.Ann. 924 (1883) "appears to be petitory" in nature. 35 La.Ann. 924. It held that a corporation with the power of expropriation can acquire a servitude by unopposed use and occupancy. St. Julien was overruled prospectively in Lake, Inc. v. Louisiana Power & Light Company, 330 So.2d 914 (La., 1976). The St. Julien doctrine is inapplicable here where the only issue is possession. When the question of ownership is litigated, the extent of any rights acquired by the City under the St. Julien doctrine can be considered.
Defendants also rely on LSA-C.C. arts. 3489 and 3490. Those articles concern the possession necessary for ten years' acquisitive prescription to commence. That possession is tantamount to good faith possession. It requires that the possessor hold the thing "in fact and in right as owner."[7] However, even a bad faith possessor, one who has no right or title to the thing, can maintain a possessory action. LSA-C.C. art. 3454.[8]
The type of possession needed to maintain a possessory action is "factual authority over a thing with the intent to own it." 2 La.Civ.Law Treat. (Yiannopoulas[9]) 2d Edition 211 at page 564. The showing required to denote an owner's control differs according to the nature of the property. Hill v. Richey, 221 La. 402, 59 So.2d 434 (La., 1952). The question is one of fact in each case. South Louisiana Land Co. v. Riggs Cypress Co., 119 La. 193, 43 So. 1003 (La., 1907). A fenced enclosure is not sacramental as long as the limits of possession are clearly delineated. Hill v. Richey, supra. Cutting grass on a right-of-way shows possession even though a portion of the enclosing fence has been removed. Texas & Pac. Ry. Co. v. Burch, 197 La. 160, 1 So.2d 64 (La., 1941).
The question is not whether the City owns the disputed strip of land, but whether it has exercised an owner's dominion over it. Unquestionably, it has. Construction and repair of streets and utilities are acts of possession. No one opposed these unequivocal and continuous activities by the City. Compare Reymond v. City of Baton Rouge, 145 La. 162, 82 So. 75 (La., 1919). The City has consistently treated the property as its own and has improved it without permission from any other party. In improving the property, the City has manifested the necessary intention to possess as owner. The City's acts of possession were apparent to all. They took place in an extremely public and visible location. Compare Carrere v. City of New Orleans, 162 La. 981, 111 So.2d 393 (La., 1926). To a passerby, the entire area has borne the aspect of a public square or neutral ground. The City has maintained the expanse in a manner appropriate to its nature by mowing the grass and picking up the trash. The tract bounded by West End, Pontchartrain and Robert E. Lee Boulevards and Polk Avenue has been in the possession of the City of New Orleans. The possession of the larger tract necessarily included possession of the lesser strip in dispute.
*978 For the foregoing reasons, the judgment of the Court of Appeal is affirmed.
AFFIRMED.
DIXON, C. J., and DENNIS, J., dissent with reasons.
CALOGERO, J., dissents and assigns reasons.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
The majority opinion concludes on a confusing note: "The tract bounded by West End, Pontchartrain and Robert E. Lee Boulevards and Polk Avenue has been in the possession of the City of New Orleans. The possession of the larger tract necessarily included possession of the lesser strip in dispute."
There was no effort by the City to prove, and no proof adduced, that it possessed the "larger tract" as owner. The only act of possession by the City in the year preceding this suit was apparently the cutting of grass. The City made no distinction among the three tracts involved when it cut the grass. It mowed all three tracts. For mowing the largest tract (the 240 foot tract which is said to be owned by the state) the record indicates that the City probably billed the state for the mowing. Therefore, the mowing of the greater part of this tract of land was never intended as an act of possession. The City mowed, but sought payment from the owner (the state) for the mowing. This error in the majority's opinion might not be fatal to its conclusion, but it is wrong to find that "the possession of the larger tract necessarily included possession of the lesser strip in dispute."
The fundamental error in the majority opinion (which requires a different conclusion) is that the record does not show acts of possession sufficient to support a possessory action.[1]
"To enable one to plead the prescription treated of in this paragraph, it is necessary that the possession be distinguished by the following incidents:
"1. That the possessor shall have held the thing in fact and in right, as owner; when, however, it is only necessary to complete a possession already begun, the civil possession shall suffice, provided it has been preceded by the corporal possession.
"2. That the possession shall have been continuous and uninterrupted, peaceable, public and unequivocal; a clandestine possession would give no right to prescribe; but he who possesses by virtue of a title can not be considered as a clandestine possessor, for his title leads to the supposition that the possession commenced in good faith, and that is sufficient to enable him to plead prescription." C.C. 3487.
"The possession on which this prescription is founded must be continuous and uninterrupted during all the time; it must be public and unequivocal, and under the title of owner." C.C. 3500.
*979 The land involved here is flat and vacant, and, except for being unoccupied, identical with that across West End Boulevard and Pontchartrain Boulevard, which is completely occupied with buildings.
Acts of possession that are necessary vary with the nature and situation of the thing possessed. Ellis v. Prevost, 13 La. 230 (1839). Cases involving swamp and timber land have held the cutting of trees and construction of roads to be sufficient. See South Louisiana Land Co. v. Riggs Cypress Co., 119 La. 193, 43 So. 1003 (1907) and Long v. Chailan, 196 La. 380, 199 So. 222 (1940). Execution of an oil and gas lease, subsequent drilling and payment to the state conservation commission for care of the marshland were found to be acts of possession in Chamberlain v. Abadie, 48 La. Ann. 587, 19 So. 574 (1896). In Liner v. Louisiana Land and Exploration Co., 319 So.2d 766 (La.1975), plaintiff had trapped and burned the marsh yearly, marked boundaries with stakes, raised cattle and actively prevented dispossession by the defendant. The court found "external and public signs" of possession. The importance of establishing boundaries was noted by the court in Boagni v. Pacific Imp. Co., 111 La. 1063, 36 So. 129 (1904), Leader Realty Co. v. Taylor, 147 La. 256, 84 So. 648 (1920) and Labarre v. Rateau, 210 La. 34, 26 So.2d 279 (1946).
Large tracts of farmland have been the subject of possessory actions. Maintenance of enclosures and the exercise of grazing privileges over the land were sufficient acts of possession in Norton v. Addie, 337 So.2d 432 (La.1976). In Hill v. Richey, 221 La. 402, 59 So.2d 434 (1952), upon which the majority relies, the placement of no trespassing signs, fences and marks made by surveyors constituted possession by plaintiff. Land was cleared, houses were built and fences were constructed in Giddens v. Madison Mobley, 37 La.Ann. 417 (1885).
The majority relies on Texas & Pacific Ry. Co. v. Burch, 197 La. 160, 1 So.2d 64 (1941) to find cutting grass an act of possession sufficient to maintain a possessory action. Burch, however, involved a 200 foot right of way that had a railroad depot, water tank, stock pen, other railroad structures and fencing located upon it. It was on that basis the Burch court found no intent to abandon the property.
Barker v. City of New Orleans, 159 La. 325, 105 So. 359 (1925) is analagous to the case at bar. A canal was filled, and the land created became the subject of a possessory action. The city had alleged possession for thirty years prior to the suit, and used the site for dumping trash. Plaintiff claimed he had possession for twelve years prior to the suit. Plaintiff's acts of possession included cutting weeds, payment of paving charges, posting of for sale signs and foundation testing. The court held these acts had occurred greater than one year before the suit was filed, and were not sufficient to sustain a possessory action. The court stressed that acts of possession must be demonstrated in the year preceding initiation of the suit. Thus, in Barker the only act of possession within the year before the suit was the periodic cutting of weeds by the plaintiff. It was held that weed cutting was insufficient to sustain the action in Barker, and the same is true in this case.
A representative of the Sewerage and Water Board testified that eighteen catch basins and four water mains were built by the Board within the contested area. None of the mains were constructed within the year immediately preceding the filing of this suit on July 14, 1964. The main at Filmore Street was installed in July of 1961. Another main was built in May of 1962 at Conrad and West End Boulevard. The main at Lane was installed in March of 1963, and the one at Harrison was built in August of 1955.
Four cross-over streets were constructed by the City in 1955 traversing the area between Pontchartrain and West End Boulevards. Sidewalks were also built across the neutral ground. The Department of Streets maintains the boundary streets and the cross-overs. Once again, the construction took place well before the time period in question, and cannot be said to evidence *980 an intent to possess the entire area as owner.
The City introduced evidence of the presence of a civil defense facility apparently built by the City on the neutral ground many years ago. The fence surrounding the building touches the line between the 40 feet and 300 feet areas. The fence does not encroach on the 40 foot strip. The map introduced to show the location of the structure did not disclose whether the structure protruded into the 40 foot strip underneath the ground, and no definitive testimony was offered on this point. An access road leading to and away from the facility crosses the entire median. Gates at either side of the roadway prevent passage by the public.
The only positive act of possession of the 40 foot strip during the year preceding institution of suit was the periodic mowing by the City of the entire neutral ground, including the contested area. No shrubbery was planted, recreation facilities established or park benches installed to indicate possession by the City.
The situation at hand involves the exercise of governmental functions by a city. Greater acts of possession than installation of utilities and streets and periodic mowing should be necessary for the City to claim possession of this entire 40 foot strip. The City has failed to establish the extent of its possession. The 40 foot strip is not distinguishable from the rest of the land.
The City's "acts of possession" were not sufficient to dispossess the defendants in this case. There were no "external and public signs"[2] to indicate the City had an intent to possess the 40 foot strip as owner, nor that the City had corporeal possession of the strip as required by C.C. 3436.
There ought to be judgment for defendants.
DENNIS, Justice, dissenting.
I respectfully dissent for the reasons assigned by Chief Justice Dixon.
CALOGERO, Justice, dissenting.
For the City to prevail in this possessory action, it must show that at the time of the disturbance it had possession of the strip of land, that the possession had been uninterrupted for more than one year prior to the disturbance and that its possession was in the character as owner. La.C.C. art. 3455; Liner v. Louisiana Land and Exploration Co., 319 So.2d 766 (La.1975). The evidence in this record cannot reasonably be construed as exhibiting that type of possession. The railroad in Texas & Pac. Ry. Co. v. Burch, 197 La. 160, 1 So.2d 64 (1941), cited in the majority opinion for the proposition that cutting grass on the right of way shows sufficient possession, had maintained a fence marking the limits of its possession for many years before a portion of it was removed to allow highway construction. The Court observed that, in addition to continuing to cut the grass after that portion of the fence was removed, the railroad also had its depot and stock pen on that side of the track.
In the instant case, the acts upon which the City relies to show its possession are (1) the cutting of streets across the strip at four intersections, (2) the installing of underground utility linessome with visible gratingsat points on the strip and (3) the mowing of the grass on the strip. The street construction is as consistent with the exercise of a servitude in favor of the City as with possession as owner, if not more so. The other acts fall short of establishing possession as owner. The City exercised the same type of acts on the involved strip of land as on the adjoining one owned by the State and later in part by these same defendants. The City surely did not possess the State's adjoining land as owner.
Additionally, I am disturbed by the blase treatment given by the majority to a serious constitutional issue. Relator argues that the City may not constitutionally take possession of private property without prior and just compensation. La.Const. art. 1, § 4. The majority dismisses this argument *981 with the brief statement that "since ownership is not being decided, defendants' property is not being `taken'." I venture to predict that the ownership of this land is being effectively decided in this opinion since the character of possession (as owner) in this possessory action is the same as the character of possession in the acquisitive prescription action which will likely succeed this litigation. La.C.C. art. 3500
For the foregoing reasons, I respectfully dissent.

ON REHEARING
BLANCHE, Justice.[*]
We granted this rehearing to reconsider whether the degree and extent of possession exercised by the plaintiff municipality was sufficient to maintain a possessory action.
Possession is defined in our Civil Code as the "detention or enjoyment of a thing which we hold or exercise by ourselves, or by another who keeps or exercises it in our name." C.C. art. 3426. Natural possession occurs when an individual detains a thing corporeally, without regard to the existence or validity of title. C.C. arts. 3428, 3430. To acquire possession of the tract of land in question the City of New Orleans was required to show its corporeal detention of the property with the intent to possess as owner. C.C. art. 3436.
What constitutes possession depends largely on the nature of the property. As noted by this Court in Liner v. Louisiana Land and Exploration Co., 319 So.2d 766 (La.1975):
"The concept of possession is neither simple nor precise. (See Riseman, Elementary Considerations in the Commencement of Prescription on Immovable Property, 12 Tul.L.Rev. 608 (1938). The quality of possession required in a particular case depends not only on its classifications as good faith or bad faith possession, but also on the type of land in dispute." Further, where an individual claims by corporeal detention alone and without title, he must show an adverse possession within enclosures. Norton v. Addie, 337 So.2d 432 (La.1976). See also 2 Civil Law Treatise (2 Ed. Sec. 212). "Enclosed" does not necessarily mean "fenced in", but does require "that the land actually, physically, and corporeally possessed by one as owner must be established with certainty, where by natural or by artificial marks; that is, that they must be sufficient to give definite notice to the public and all the world of the character and extent of the possession, to identify fully the property possessed, and to fix with certainty the boundaries or limits thereof." Hill v. Richey, 221 La. 402, 59 So.2d 434 (1952).
The corporeal possession required to institute a possessory action corresponds with the possession necessary for acquisitive prescription of thirty years. Norton v. Addie, supra; Liner v. Louisiana Land & Exploration Co., supra. Consequently, the possession must be open, continuous, public, unequivocal and uninterrupted with the intent to possess as owner. Succession of Kemp v. Robertson, 316 So.2d 919 (La.App., 1975), writ den. 320 So.2d 906. The intent to possess as owner cannot be inferred when the circumstances are insufficient to give reasonable notice to the public and the owner of the property that the possessor is unequivocally possessing as owner. Woodell v. Roberts, 329 So.2d 858 (La.App.1976), writ ref. 333 So.2d 248.
The City contends that by its acts of urban maintenance, it exercised possession in the only manner appropriate for this type of property. As a result, its intent to possess as owner was sufficiently manifested to the property owner. We agree that these acts, under the appropriate circumstances, could constitute corporeal detention with the intent to possess as owner. The regular upkeep and maintenance of another's property would normally alert the property *982 owner of the possessor's claim and be sufficient to support a possessory action. We do not dispute that a municipality may possess a private individual's property, as long as the acts relied upon are of sufficient magnitude to warn the property owner of an adverse claim. Nevertheless, the conduct relied upon should not be considered in the abstract. Due weight ought to be given to the nature of the property, its location and the party asserting possession. Contrary to our original opinion we now hold that, when the acts exhibited by the city are considered in light of the above factors, it is clear as to the 40 foot grassy strip here in dispute that the city failed to establish the extent of its possession and that neither the public nor the property owner were sufficiently apprised that the city's "possession" was adverse or hostile.
The strip of land involved in the present dispute is part of a flat, open, unoccupied piece of urban property. The entire tract containing the contested strip of property has the appearance of an unusually large "neutral ground." The following diagram indicates the disputed property's location within the neutral area.

It is readily apparent that the neutral area is enclosed by four main thoroughfares. Be this as it may, it is undisputed that the tract of land in question is not enclosed on two sides along the entirety of its length of 7,200 feet. On one side it is adjacent to another tract of grassy land, 60 feet wide, which belongs to defendant and is not involved in litigation. Next to this 60 foot strip is the 240 foot wide piece of property owned by the state. Adjacent to the other side of the disputed tract is a 17 foot strip of grassy land that forms part of the West End Boulevard right of way. There are no boundary markers whatsoever to indicate the limits between defendant's land and the land involved in litigation or between the West End Boulevard right of way and the land involved in litigation. Thus, because of its location and the lack of boundary markers, the contested tract is indistinguishable from any other property located in the neutral area. The city does not claim that it possesses the property adjoining either side of the 40 foot wide strip. Further, the city, which billed the state for its services over the majority of the neutral ground area, surely did not assert its possession, as owner, over the state-owned tract of land.
Consequently, the City did not show possession within enclosures and failed to establish the extent of its claim. As noted earlier, and correctly stated by the court of appeal:
"The concept of enclosures is pertinent to the determination of extent of possession. When a possessor has a title, his exercise of possession over a part of the property constitutes the exercise of constructive possession of the whole; however, when a possessor does not have a title, his claim of possession is limited in extent to that property shown by enclosures (artificial or natural boundaries) and his possession must be proved `inch by inch', so that the possessor must establish actual, physical and corporeal possession over the entire amount of land claimed in the possessory action. Stated otherwise, the possessor without title is entitled to be maintained in possession only to the extent of the boundaries within which he proved actual, physical and corporeal possession. Prevost's Heirs v. Johnson, 9 Mart. (O.S.) 123 (La.1820); Crichton v. Giddens [148 La. 970] 88 So. 236 (1921); Risemore, The Possessory Action in Louisiana, 20 Tul.L.Rev. 524, 437 (1946); Yiannopoulos, above, Sec. 138, pp. 110-111 (1978 Supp.)." *983 On original hearing, this Court concluded that:
"The tract bounded by West End, Pontchartrain and Robert E. Lee Boulevards and Polk Avenue has been in the possession of the City of New Orleans. The possession of the larger tract necessarily included possession of the lesser strip in dispute."
This statement was meant to stand for the proposition that possession of an enclosed tract ("the larger tract") includes all of the land within that tract ("the lesser strip"). Thus, had the City been able to prove it openly, continuously and unequivocally possessed all of the land comprising the neutral ground, which was enclosed, its possession would have included defendant's property, as it was part of the enclosed area. Because the city does not claim possession of the strips of land adjoining the contested property, nor possession of the state-owned property, it has failed to establish possession of the "larger tract", which "necessarily included possession of the lesser strip in dispute."
Further, we are of the opinion that the performance of the governmental functions relied upon by the city were insufficient to give notice that it "possessed" the 40 foot strip as owner. These customary chores of maintenance and upkeep relied upon by the city to establish possession were not limited to the strip of land in question, but were performed indiscriminately and without distinction over the entire area of the neutral ground, which was comprised of several other tracts of land, none of which is claimed by the city. Further, for mowing the larger part of the neutral ground, which is owned by the state, the record indicates that the city sought payment from the state. Thus, with respect to the majority of the neutral area, the city's possession was not as owner but, rather, precarious.[1] Though the city's acts of maintenance and upkeep took place in a highly visible location, they were clearly inadequate to give warning that it claimed only the tract in dispute as owner.
The only possible activity of sufficient magnitude to apprise the property owner of a possible assertion of possession was the construction and maintenance of the four crossroads traversing the area. However, it is our belief that these roadways crossing the 40 feet wide tract at distant intervals were insufficient to support possession of the entire strip of property, which is over one mile long. At best, these roadways created an interest in the nature of a servitude of passage. See Conrad v. Riene, 240 So.2d 915 (La.App.1970); 1 Civil Law Treatise, supra, Sec. 33.
Accordingly, the judgment in favor of the City of New Orleans is reversed, and judgment is rendered in favor of defendant, New Orleans Canal, Inc.
MARCUS, J., dissents, adhering to the reasons assigned on original hearing.
WATSON, J., dissents and assigns reasons.
WATSON, Justice, dissenting.
I dissent for the reasons assigned in the original opinion, although the extremely pervasive argument presented on rehearing has caused me to have serious reservations about some of the initial conclusions.
In this very difficult case, the trial court was not clearly wrong. Additionally, there is the significant fact that the City billed the State for its services but not the New Orleans Canal company. Also, the record does not reflect that any paving liens or other taxes were assessed against the Canal company.
The evidence tends to show that the City of New Orleans possessed the tract in dispute as owner, as the trial judge found.
I respectfully dissent.
NOTES
[*] Honorable Paul B. Landry, Jr., participated in this decision as Associate Justice Ad Hoc in place of Lemmon, J., recused.
[1] The defendants are New Orleans Canal, Inc., Southdown, Inc., substituted as a defendant in place of Canal Assets, Inc., both Louisiana corporations domiciled and having their principal place of business in the City of New Orleans, Louisiana, Julius J. Weigel, Horace LeCompte, Arthur L. Gulledge, Elizabeth U. Gulledge, Betty S., wife of and August P. LeBourgeois, all residents of and domiciled in the Parish of Jefferson, Louisiana, Robert Louis Carruth, and Charles I. Kenny, Jr., each a resident of and domiciled in the Parish of Orleans, Louisiana.
[2] LSA-C.C. art 3455 provides:

"The action which a possessor for one year has against a person disturbing his possession, to be maintained in it or restored to it, as is said in the preceding article, shall be decided before pronouncing on the question of ownership, and the real owner shall not be allowed to repel it by endeavoring to prove his right."
[3] LSA-C.C. art. 3436 provides:

"To be able to acquire possession of property, two distinct things are requisite:
"1. The intention of possessing as owner;
"2. The corporeal possession of the thing."
[4] LSA-C.C. art. 3450 provides:

"Although possession results frequently from a fact, and not from right, it nevertheless confers on the possessor certain rights with regard to the thing possessed, some of which are peculiar to the possessor in good faith, and the others are common to all possessors."
[5] LSA-C.C. art. 3440 provides:

"For the same reason corporations may, acquire the possession of a thing, through the agency of those who administer their affairs."
[6] LSA-C.Cr.P. art. 3452 provides:

"The possessor in bad faith is he who possesses as master, but who assumes this quality, when he well knows that he has no title to the thing, or that his title is vicious and defective."
[7] LSA C.C. art. 3487 (emphasis added).
[8] LSA C.C. art. 3454 provides:

"Rights, which are common to all possessors in good or bad faith, are that:
"1. They are considered provisionally as owners of the thing which they possess, so long as it is not reclaimed by the true owner or person entitled to reclaim it, and, even after such reclamation, until the right of the person making it is established.
"2. Every person who has possessed an estate for a year, or enjoys peaceably and without interruption a real right, and is disturbed in it, has an action against the disturber, either to be maintained in his possession, or to be restored to it, in case of eviction, whether by force or otherwise.
"3. Such a possessor may, by prescription, acquire the ownership of the thing which he thus possesses, after a certain time, which is established by law according as he has possessed in good or bad faith.
"4. Such a possessor has the right, in case of eviction from the thing reclaimed, to retain it until he is reimbursed the expenses he is entitled to claim."
[9] W.R. Irby Professor of Law, Tulane University.
[1] Within the 40 foot strip of land in controversy, eighteen catch basins have been built by the Sewerage and Water Board within the contested area. The record is not clear whether these catch basins are connected with one another by subterranean drains, or whether each one carries water to a drainage system in the adjacent subdivisions. Some water mains have also been constructed at some points across the contested area. Of course, the water mains are underground, and completely invisible, classically "clandestine." The catch basins have cast iron covers two feet in diameter, visible only at ground level on relatively close examination, near or at street intersections. None of the drains appear to have been constructed within the year immediately preceding the filing of this suit in 1964.

The drains and catch basins and water mains, invisible except for catch basins which can be seen only when the viewer is close to them, cannot be considered such a construction as would give notice to anyone that the City claims ownership of this tract of land. C.C. 3501 provides:
"The possession necessary for this species of prescription, when it has commenced by the corporal possession of the thing, may, if it has not been interrupted, be preserved by external and public signs, announcing the possessor's intention to preserve the possession of the thing, as the keeping up of roads and levees, the payment of taxes, and other similar acts."
[2] Liner v. Louisiana Land and Exploration Co., 319 So.2d 766, 772 (La.1975).
[*] Honorable Paul B. Landry, Jr. participated in this decision as Associate Justice Ad Hoc in place of Lemmon, J., recused.
[1] C.C. Art. 3441 provides that "... Those who possess, not for themselves, but in the name of another, as farmers, depositaries and others who acknowledge an owner, can not acquire the legal possession, because, at the commencement of their possession, they had not the intention of possession for themselves but for another."