# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-1284


TERESA ALLEN, ET AL.

VERSUS

GLENN EDWARD BELGARD, ET UX


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 211,399
HONORABLE HARRY FRED RANDOW, DISTRICT JUDGE


**\*\*\*\*\*\*\*\*\*\***
## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE
**\*\*\*\*\*\*\*\*\*\***


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and James T. Genovese, Judges.

**AFFIRMED IN PART; REVERSED
IN PART; REMANDED IN PART.**


**Richard E. Lee
810 Main Street
Pineville, LA 71360
Telephone: (318) 448-1391
COUNSEL FOR:**
    **Defendants/Appellees - Glenn Edward Belgard and Johnna Sue Haynes Belgard**

**Ricky L. Sooter
PROVOSTY, SADLER, deLAUNAY, FIORENZA & SOBEL
P. O. Drawer 1791
Alexandria,, LA 71309-1791
Telephone: (318) 445-3631
COUNSEL FOR:**
    **Plaintiffs/Appellants - Teresa Allen, Leslie Allen, and Estelle Ryder**

THIBODEAUX, Chief Judge.

Plaintiffs, Teresa and Leslie Allen and Estelle Ryder, seek to be placed in possession of a tract of land located just west of and adjacent to the property they own. Their claims are based upon possession of the property for more than a year prior to the alleged disturbance by the defendants, Glenn and Johnna Sue Belgard. For the following reasons, we affirm in part, reverse in part, and remand in part.

## I.

## ISSUES

We must decide:

(1)     whether the trial court erred in finding that Teresa and Leslie Allen failed to prove that they retained the disputed property within enclosures and in dismissing their possessory action, particularly with regard to their carport and driveway; and,

(2)     whether the trial court erred in dismissing the possessory action of Estelle Ryder.

## II.

## FACTS AND PROCEDURAL HISTORY

In 1948, Roy O. Martin Lumber Company (Martin Lumber) purchased 186.98 acres of land referred to as fractional Section 16, located in Township 5 North, Range 2 East, in Rapides Parish, Louisiana.[1] Section 16 sits side-by-side with, and immediately west of, Section 11. Accordingly, the two sections share a common boundary. It is undisputed that Martin Lumber's ownership in the portion of Section 16 that is at issue herein extended all the way eastward to the common boundary line between Section 16 and Section 11. However, Martin Lumber did not have the land

_____

[1] A "township" contains 36 "sections;" and each full section of land contains 640 acres.

1

surveyed in 1948, and the boundary line between Section 16 and Section 11, as with most section lines, is not a visible line on the ground.

In order to roughly define its ownership at the eastern border of Section 16, Martin Lumber began the practice of placing a swath of yellow paint about shoulder high on a line of trees that Martin Lumber perceived to be on or very near the actual section boundary that constituted its ownership. However, the 26 or 27 painted trees, as determined in recent and separate surveys by the plaintiffs and defendants in this case, are not in a straight line and have some large gaps between them, over 274 feet in one instance, with other trees and vegetation growing in between the painted trees. The intent by Martin Lumber was to re-paint the same trees every three to five years, and this was essentially carried out by Martin Lumber, or outsourced to an independent contractor by Martin Lumber, for over fifty years.

However, the recent surveys reveal that Martin Lumber's tree line did not lay along the eastern section line of Section 16 but bowed significantly inward, i.e., westward, into Martin Lumber's property, creating a triangular-shaped piece of land in Section 16 between the tree line and the surveyed section line. The triangular-shaped piece of land entirely in Section 16 was owned by Martin Lumber but not maintained by Martin Lumber, at least not at the time that this litigation arose in 2002. It is not known whether the painted tree line veered away from the actual section line from the beginning, around 1948, or whether the various tree painters caused the painted tree line to move over time.

The current litigation involves a property dispute for possession, not ownership, of this triangular-shaped piece or portion of land located entirely in Section 16 along its eastern boundary. The dispute arose in 2002, around the time that Martin Lumber sold the land in Section 16, including the triangular-shaped portion, to the defendants, Mr. and Mrs. Glenn Edward Belgard. The Belgards had

the land surveyed and subsequently recorded their act of sale on November 27, 2002, thereby allegedly disturbing the peaceful possession of the triangular-shaped piece of land by the plaintiffs, Teresa and Leslie Allen, and Teresa's aunt, Estelle Ryder. Teresa Allen allegedly owns seven tenths (.7) of an acre, and Estelle Ryder allegedly owns 13.2 acres of land in the neighboring Section 11. Because the Belgards' surveyor had cleared a strip of land before the Belgards finalized and recorded their purchase on November 27, 2002, all parties were aware of or anticipated an ensuing dispute, and Martin Lumber specifically excluded the triangular-shaped piece of land from the warranty of title that it executed in favor of the Belgards at the time of sale. Hence, Martin Lumber is not a party to this suit.

Conceptually, and more specifically, the land at issue in Section 16 resembles an elongated, inverted triangle. This inverted triangle of land, believed to contain around eight acres of land, is bordered on the north by Lee Bridge Road, on the east by the invisible common boundary line between Section 16 and Section 11, and on the west by the widely spaced line of yellow-painted trees. Lee Bridge Road runs more or less diagonally in a southeasterly direction through Section 16 and Section 11. The inverted triangle of land at issue in Section 16 has approximately 217 feet frontage on Lee Bridge Road, running diagonally west to east, and possibly 1400 feet frontage on the common section line, running diagonally north to south. The longest leg of the inverted triangle is the tree line, for which we have no measurement. The southern tip of the triangle extends almost to the southern section line of Section 16, also known as the northern boundary line of Section 27, which lies directly beneath Section 16.

According to the testimony of John Michael Dunn, who has been the District Forest Manager for Martin Lumber since 1976, Martin Lumber had leased the entire Section 16 property, all the way to the eastern boundary line of Section 16, to

the Holloway Hunting Club, and Martin Lumber conducted no lumbering or other activity on the land except to re-paint the trees approximately every three to five years. Mr. Dunn testified that the trees were most recently painted in 2001, and again accidently in 2004 because the contracted painter was unaware that the property had been sold to the Belgards. The plaintiffs, Teresa and Leslie Allen, were members of the hunting club but did not sign the lease. It is not known whether the hunting club members hunted to the tree line or beyond the tree line and into the triangle. However, the hunting club lease extended all the way eastward to the common boundary between Section 16 and Section 11.[2] When Martin Lumber sold the land, including the triangle, to the Belgards, it essentially gave credit back to the hunting club for the acreage that it sold to the Belgards.

Following the surveying activities in September and October 2002, and the recordation of the sale to the Belgards on November 27, 2002, the plaintiffs received a letter from the Belgards dated December 4, 2002. The plaintiffs' petition asserts that the letter "made demands upon petitioners to vacate the property long possessed by them and their ancestors." The plaintiffs' petition further asserts that the plaintiffs responded to the December 4, 2002 letter by advising the Belgards to avoid any action which would disturb the plaintiffs' possession of the property, but that the Belgards entered the property on December 22, 2002 and erected posts and signs which impeded the ingress and egress of the plaintiffs' vehicles on the property.

On December 27, 2002, Teresa and Leslie Allen and Estelle Ryder filed a Petition for Possession, Injunction and Damages, alleging that they had "had possession of the property as owners, quietly and without interruption, for more than a year immediately prior to the surveying activities." They asked for an injunction

_____

[2]We note that if the hunting club members hunted into the triangle, that activity would have disturbed any possession by the plaintiffs. However, that fact is not known and will not be a factor in our review of the trial court's judgment in this case.

enjoining the Belgards from entering the property, costs for removal of signs, fencing, or construction on the property, and for a judgment recognizing their rights to the possession of the property.

At the time of trial in January 2005, Teresa Allen had been a traffic, sign, and signal superintendent for the city of Alexandria for six years. She testified that she moved back to Louisiana from Tennessee and began renting her property from her brother in 1995. The record contains a copy of the cash sale evidencing that Teresa purchased seven tenths of an acre (.7) of land in Section 11 from her brother, David B. Wiggins, for $19,953.23 on April 14, 1999. The land bears the address of 23 Lee Bridge Road, Deville, Louisiana. As stated, Lee Bridge Road runs more or less diagonally through Sections 16 and 11, in a southeasterly direction as it crosses the common section line between the two sections. Teresa Allen's partial acre in Section 11 lies next to or is adjacent to the triangular-shaped 8-acre piece of land at issue in Section 16. Her property also resembles an inverted triangle, but with a squared off southern tip constituting a fourth leg. Allen's partial acre also has Lee Bridge Road as a northern boundary.

The record contains a copy of a survey prepared by land surveyor Alfred C. Gilo for Teresa Allen's brother, David B. Wiggins. This survey and Teresa's cash sale indicate that her property measures 187.15 feet fronting on Lee Bridge Road on the north, 357.87 feet fronting on the common section line on the west, 56.88 feet across on the southern boundary running eastward from the common section line, and her eastern boundary line measures 243.50 feet. We note that these measurements are confirmed in the survey prepared by James Townsend for the plaintiffs, but the survey prepared by Stephen Gremillion for the Belgards varies from these measurements. The Gremillion survey shows the Allen property in Section 11 longer and narrower than the cash sale and the surveys of Mr. Cilo and of Mr. Townsend and also the

5

description in a legal acknowledgment that we will discuss below. However, the property in Section 11 is not at issue herein. Only the property in Section 16 is at issue. Therefore, we will not address the correctness of one survey over the other.

With regard to Teresa Allen's partial acre in Section 11, none of the documents discussed in detail above depict or discuss improvements. However, the record also contains an Acknowledgment of Separate Property dated April 23, 1999, and executed by Leslie Allen. Therein, Mr. Allen acknowledges that the property of Teresa Allen bearing the same legal description as the above-described cash sale and surveys of Mr. Cilo and of Mr. Townsend, "together with all buildings and improvements," is entirely separate property from their community as husband and wife.

Teresa Allen testified that her property in Section 11 has her home, a carport, and a recently purchased mobile home. She further testified that her driveway and a small corner portion of her carport is now known to be in Section 16. The driveway runs south from Lee Bridge Road, very near the section line on the Section 16 side of the line, and veers eastward into the carport located almost entirely in Section 11. Teresa Allen testified that her driveway used to be an old road, and pictures in the record depict a dirt driveway stopping at the entrance of a roofed carport built on a concrete slab. The house, carport, and driveway are located near Lee Bridge Road.

Teresa Allen's aunt, Estelle Ryder, owns parcels of land in Section 11 including 13.2 acres of land in the vicinity of Teresa's tract in Section 11. Estelle Ryder's current house, where she has lived for over fifty (50) years, is located on Lee Bridge Road on a portion of land east of Teresa Allen's tract. Believing that her aunt Estelle owned the larger tract of land around her, Teresa Allen and her husband conducted activities in Section 16. Teresa testified that they bush-hogged the

6

property, mowed the grass, picked figs, cut firewood, and put a shed, tractors, an old vehicle, an old boat, a chicken pen, and an old mobile home on the larger triangular-shaped tract of land now known to be located entirely in Section 16. Accordingly, the Allens claim that they are entitled to be put in possession of the disputed property in Section 16. However, Teresa Allen admitted that she was maintaining the larger tract of land, not for herself, but for her aunt, Estelle Ryder.

Estelle Ryder has obtained a judgment in her favor in another case regarding certain parcels of land in Section 11. That judgment is now on appeal to the Louisiana Supreme Court. However, Estelle Ryder, now around the age of 89, also maintains that she had improvements including a garden, orchard, and hog pen on the tract at issue in Section 16, as well as an old lumber or log house that appears to have straddled the section line, and that burned in the 1950's. Accordingly, even though Estelle Ryder (formerly Wiggins, formerly Gunter) has lived entirely in Section 11 and east of Teresa Allen for over fifty years, Ms. Ryder asserts that she is entitled to be put in possession of the tract in Section 16 due to her activity on that land since her first marriage to Robert Gunter in 1933.

At the end of the plaintiffs' case, the defendants, Mr. & Mrs. Belgard, moved for an involuntary dismissal of the suit as to Teresa and Leslie Allen based upon Teresa Allen's undisputed testimony that she was possessing and maintaining the land in Section 16 for her aunt, Estelle Ryder. Because an important element in a possessory action is that the petitioner possess the property as an owner, the trial court granted the Belgards' motion for involuntary dismissal as to Teresa and Leslie Allen. The trial proceeded as to Estelle Ryder.

On January 21, 2005, the trial court issued a Judgment of Involuntary Dismissal as to Teresa and Leslie Allen. The judgment included a paragraph casting the Allens with one-half (½) of the costs of the proceedings, but the trial court struck

7

the paragraph from the judgment. A few days later, the Allens filed a motion for a new trial based upon evidence that the Allens possessed their garage and driveway for themselves, as owners, and not on behalf of Estelle Ryder, and a motion to be cast for only one-half (½) of the costs. As previously indicated, a corner of the garage or carport and most of the driveway is located in Section 16 in the disputed triangle of land purchased by the Belgards.

On May 10, 2005, the trial court issued Written Reasons for Judgment which appear to explain the dismissal of *all* plaintiffs, including Estelle Ryder, even though the judgment of January 21, 2005, dismissed only the Allens. We believe that these written reasons on May 10 dismiss all plaintiffs because the trial court referred to "plaintiffs" in general throughout the reasons without naming them individually and discusses taking the matter under *advisement* and reviewing post trial memoranda. However, the court had dismissed the Allens' possessory action *from the bench* at the end of their case on January 19 and prior to hearing argument from the Belgards on Estelle Ryder's possessory claims. As we previously indicated, on the same date, January 19, 2005, at the end of the Belgards' defense of the Ryder claims, the court then took the Ryder claims under advisement and set dates for post-trial memoranda. Therefore, the reasons purport to do more than the judgment issued in January 2005.

On June 16, 2005, the trial court issued Supplemental Written Reasons for Judgment. Even though not a "judgment," the supplemental reasons contained language that Teresa Allen's motion for a new trial regarding her possession of her carport and driveway, was denied. The supplemental written reasons also stated that the plaintiffs, again implying *all* plaintiffs, had failed to "support their claims for thirty-year acquisitive prescription." The trial court further indicated that it would decide expert witness fees when the parties submitted a judgment for same.

8

On June 17, 2005, the trial court issued another judgment, clearly naming and dismissing all plaintiffs and decreeing that "the Plaintiffs have failed to prove the requirements of possession within a visible boundary." This judgment also set expert witness fees, officially denied the Allen's motion for new trial, and assessed all costs to the plaintiffs. The judgment also referenced the original and supplemental written reasons of May 10 and June 16 respectively.

It is this Judgment of June 17, 2005, from which the Allens and Estelle Ryder bring this appeal, even though the clerk of the trial court indicated the January judgment as the one appealed.

The plaintiffs' motion for appeal was filed on July 11, 2005. Apparently unbeknownst to the plaintiffs, the trial court rendered and signed its Second Supplemental Written Reasons for Judgment on July 5, 2005, but filed and recorded them on July 11, the same date that the plaintiffs filed their motion for appeal.

The trial court's overlapping Second Supplemental Written Reasons for Judgment of July 2005 attempted to vacate its first supplemental reasons and purported to grant the Allens a new trial regarding their possession of their carport and driveway. The court indicated that it had been corrected by the plaintiffs' counsel regarding its previous reference to the plaintiffs' failure to prove "thirty-year acquisitive prescription." The trial judge indicated that he was reminded that the current actions were *possessory* actions only, not *petitory* actions which seek a judgment of *ownership* and which often involve proof of thirty years of undisturbed possession, commonly called ownership by "thirty-year acquisitive prescription."

It is clear that the intent of the trial court in July, 2005 was to grant the new trial. However, the trial court attempted to do so too late, and attempted to do so by vacating its written reasons rather than vacating that portion of its prior judgment. The plaintiffs' motion for appeal is from the trial court's prior Judgment

of June 17, 2005 which specifically denies the motion for a new trial. Therefore, rather than remand the case for a new trial, we will reverse the portion of the June 17, 2005 judgment that denies the new trial and decide the issue of the Allens' carport and driveway based upon the ample evidence and testimony in the record. As to the remainder of the judgment on appeal, we affirm the dismissal of the possessory action of Teresa and Leslie Allen and of Estelle Ryder with regard to the remaining portions of the triangular-shaped tract of land in Section 16 beyond the carport and driveway of the Allens.

III.

## LAW AND DISCUSSION

### Standard of Review

An appellate court may not set aside a trial court's findings of fact in absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989). A two-tiered test must be applied in order to reverse the findings of the trial court:

    a.    the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and

    b.    the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).

*Mart v. Hill*, 505 So.2d 1120 (La.1987).

Even where the appellate court believes its inferences are more reasonable than the fact finders, reasonable determinations and inferences of fact should not be disturbed on appeal. *Arceneaux v. Domingue*, 365 So.2d 1330 (La.1978). Additionally, a reviewing court must keep in mind that if a trial court's findings are reasonable based upon the entire record and evidence, an appellate court

may not reverse said findings even if it is convinced that had it been sitting as trier of fact it would have weighed that evidence differently. *Housely v. Cerise*, 579 So.2d 973 (La.1991). The basis for this principle of review is grounded not only upon the better capacity of the trial court to evaluate live witnesses, but also upon the proper allocation of trial and appellate functions between the respective courts.

## The Possessory Action

The Louisiana Code of Civil Procedure and the Louisiana Civil Code address the possessory action through various articles which provide in pertinent part as follows:

> La.Code Civ.P. art. 3655. Possessory action
>
> The possessory action is one brought by the possessor of immovable property or of a real right therein to be maintained in his possession of the property or enjoyment of the right when he has been disturbed, or to be restored to the possession or enjoyment thereof when he has been evicted.
>
> La.Code Civ.P. art. 3656. Same; parties; venue
>
> A plaintiff in a possessory action shall be one who possesses for himself. A person entitled to the use or usufruct of immovable property, and one who owns a real right therein, possesses for himself. A predial lessee possesses for and in the name of his lessor, and not for himself.
>
> The possessory action shall be brought against the person who caused the disturbance. . . .
>
> La.Code Civ.P. art. 3662. Same; relief which may be granted successful plaintiff in judgment; appeal
>
> A judgment rendered for the plaintiff in a possessory action shall:
>
> (1) Recognize his right to the possession of the immovable property or real right therein, and restore him to possession . . . or maintain him in possession . . . ;

(2) Order the defendant to assert his adverse claim of ownership of the immovable property or real right therein in a petitory[3] action to be filed within a delay to be fixed by the court not to exceed sixty days after the date the judgment becomes executory. . . ; and

(3) Award him the damages to which he is entitled and which he has prayed for.

La.Code Civ.P. art. 3658. Same; requisites

To maintain the possessory action the possessor must allege and prove that:

(1) He had possession of the immovable property or real right therein at the time the disturbance occurred;

(2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;

(3) The disturbance was one in fact or in law, as defined in Article 3659; and

(4) The possessory action was instituted within a year of the disturbance.

La.Code Civ.P. art. 3659. Same; disturbance in fact and in law defined

Disturbances of possession which give rise to the possessory action are of two kinds: disturbance in fact and disturbance in law.

A disturbance in fact is an eviction, or any other physical act which prevents the possessor of immovable property or of a real right therein from enjoying his possession quietly. . . .

---

[3]The purpose of La.Code Civ.P. art. 3662 is "to keep the trial of the issues of possession and ownership as separate as possible and to encourage the determination of the issue of possession before the bringing of the petitory action." *Causeway Land Co., Inc. v. Karno,* 317 So.2d 661, 664 n.3 (La.App. 4 Cir. 1975) (citing Yiannopoulous, Louisiana Civil Law Treatise-Property, § 138 (1966)).

A disturbance in law is the execution, recordation, registry, or continuing existence of record of any instrument which asserts or implies a right of ownership or to the possession of immovable property or of a real right therein. . . .

La.Code Civ.P. art. 3660.  Same; possession

A person is in possession of immovable property or of a real right therein, within the intendment of the articles of this Chapter, when he has the corporeal possession thereof, or civil possession thereof preceded by corporeal possession by him or his ancestors in title, and possesses for himself, whether in good or bad faith, or even as a usurper.

La.Code Civ.P. art. 3661.  Same; title not at issue; limited admissibility of evidence of title

In the possessory action, the ownership or title of the parties to the immovable property or real right therein is not at issue.

La.Civ.Code art. 3424.  Acquisition of possession

To acquire possession, one must intend to possess as owner and must take corporeal possession of the thing.

Additionally, our jurisprudence provides that the type of possession required for a possessory action is identical to that required to commence the running of acquisitive prescription. *Liner v. Louisiana Land and Exploration Company*, 319 So.2d 766 (La.1975); *Hill v. Richey*, 221 La. 402, 59 So.2d 434 (1952).  In *Phillips v. Fisher*, 93-928 (La.App. 3 Cir. 3/2/94), 634 So.2d 1305, *writ denied,* 94-0813 (La. 5/6/94), 637 So.2d 1056, we summarized the law of adverse possession of thirty years acquisitive prescription:

Immovable property may be acquired through thirty years acquisitive prescription without good faith or just title.  The party asserting acquisitive prescription bears the burden of proving all the facts that are essential to support it.  A possessor will only be considered as possessing that part of property over which he exercises actual, adverse, corporeal possession which is *continuous*, *uninterrupted*, *peaceable*, *public*, *unequivocal*, and *within visible bounds*.

13

He must also prove that he intended to *possess as owner*, adverse to the actual owner, for the required thirty years.

*Id*. at 1307 (citations omitted) (Emphasis added).

Moreover, in the landmark case of *Hill*, 59 So.2d 434, the court articulated that where ownership is claimed by possession, without proof of title, the claimant must show adverse possession *by enclosure*, and his claim will not extend beyond such enclosure. In other words, there must be some markers or boundaries, either artificial or natural, evincing an intention on the claimant's part of the extent and area of land over which he asserts his possession. The term "enclosures" is not limited to fences and walls, but such marks or bounds must be visible and sufficient to denote the location, area, and extent of the land over which possession is alleged.

### Claims of Teresa and Leslie Allen

The trial court found that the Allens did not have the requisite intent to possess the triangular-shaped piece of land in Section 16 as owners. Teresa Allen testified in her deposition and at the trial on the merits that she was maintaining the property in Section 16 for her aunt, Estelle Ryder. Our jurisprudence provides that, even though the fact that a possessor goes into possession of a subject property creates the presumption that he possesses it as owner, that presumption is rebutted by the possessor's testimony that he did not intend to possess it as owner but only by sufferance of the owner. *See Humble v. Dewey*, 215 So.2d 378 (La.App. 3 Cir. 1968). A person who lacks the intent to possess as an owner is not a possessor at all. La.Code Civ.P. art. 3424; *Griffin v. Lago Espanol, L.L.C.,* 00-2544 (La.App. 1 Cir. 2/15/02), 808 So.2d 833.

A plaintiff does not have the requisite intent to maintain the possessory action if he denies any intent to possess the property as owner and states without any equivocation that he does not possess the property as owner. *See Harper v. Willis*,

14

383 So.2d 1299 (La.App. 3 Cir.), *writ denied*, 390 So.2d 202 (La.1980). In *Harper*, the court stated that "if someone, without legal claim or intention to possess as owner, uses the property in any manner, it is without legal significance or detriment to the true owner." *Id*. at 1306.

In the present case, during the presentation of the plaintiffs' case, counsel for plaintiff Teresa Allen called Mrs. Allen to testify. During her cross-examination by defense counsel, Teresa Allen testified as follows:

**<u>Cross Examination by Mr. Lee [defense counsel]:</u>**

Q.      Do you remember when I took your deposition. . . .

A.      Yes Sir, I don't remember the exact day . . . .

Q.      And I asked you, "Well, are you in possession of this Section 16 property that lies between the yellow painted line and Section 16 line?["]   Do you remember when I asked you that?

A.      I believe that I answered that we had been maintaining and taking care of it and possessing it for Aunt Estelle.

Q.      Right.  Not for yourself but you were maintaining it and possessing it for your Aunt Estelle, is that correct?

A.      Correct.

Q.      Not for yourself?

A.      Correct.

        . . . .

Q.      Right, you weren't possessing it for yourself, you and Leslie, were you?

A.      We were maintaining it and taking care of it for Aunt Estelle Ryder.

Based upon the foregoing testimony, at the end of the plaintiffs' case, counsel for Mr. and Mrs. Belgard moved for a judgment of involuntary dismissal

15

pursuant to La.Code Civ.P. art. 1672.[4]  The trial court then asked counsel for the plaintiffs if he wished to be heard.  Counsel for the plaintiffs stated as follows:

**By Mr. Sooter:**

Well, Your Honor, I think the statement of law by Mr. Lee is correct and that a person has to possess property with the intent of owner and certainly a person can possess for a third party, in this case she testified truthfully and it was consistent with her deposition that was taken earlier that she has possessed this property, any actions that she did on the Section 16 property was at the behest of or for the benefit of Teresa, uh, I mean of Estelle Ryder and I believe with reference to that I think the motion is valid with reference to the lack of an element, that is, possessing as owner on behalf of Teresa Allen and Leslie Allen as plaintiffs in this matter.  I believe by their own testimony certainly by Teresa's that any action she conducted on the Section 16 property South of Lee Bridge Road east of the yellow painted line was for the benefit of Estelle Ryder who she considered to be the owner and the person who controlled that property. . . . that is correct, Your Honor.

The trial court then ascertained from Mr. Sooter that he would not contest the motion to dismiss as it applied to Leslie Allen either.  From the bench, the court granted the motion to dismiss as to Teresa and Leslie Allen.  In its reasons for judgment, after discussing the articles requiring that a successful possessor must show intent to possess as owner, the trial court also discussed the plaintiffs' failure to show possession within visible enclosures.  More specifically, the trial court quoted language from *Chaney v. State Mineral Board,* 444 So.2d 105 (La.1983), and from *City of New Orleans v. New Orleans Canal, Inc.,* 412 So.2d 975 (La.1981), which discussed enclosures as follows:

---

[4]In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief.  The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party . . . .  La.Code Civ.P. art. 1672(B).

> [W]hen a possessor does not have a title, his claim of possession is limited in extent to that property shown by enclosures (artificial or natural boundaries) and his possession must be proved 'inch by inch' so that the possessor must establish actual, physical and corporeal possession over the entire amount of land claimed in the possessory action. Stated otherwise, the possessor without title is entitled to be maintained in possession only to the extent of the boundaries within which he proved actual, physical and corporeal possession. (Citations omitted.) (Emphasis provided.)

*Chaney,* 444 So.2d at 108 (quoting *City of New Orleans,* 412 So.2d at 982). The trial court also quoted *City of New Orleans* for the proposition that *enclosed* does not necessarily means fenced in . . .

> but does require "that the land actually, physically, and corporeally possessed by one as owner must be established with certainty, where by natural or by artificial marks; that is, that they must be sufficient to give definite notice to the public and all the world of the character and extent of the possession, to identify fully the property possessed, and to fix with certainty the boundaries or limits thereof." *Hill v. Richey*, 221 La. 402, 59 So.2d 434 (1952).

*City of New Orleans,* 412 So.2d at 981.

In the present case, the trial court then stated that the twenty-seven (27) trees painted by Martin Lumber at various intervals over the preceding fifty-three (53) years "do not constitute a visible enclosure due to the varying and sometimes extreme distance between the painted trees." Accordingly, the trial court found that the plaintiffs did not prove inch-by-inch possession within a visible boundary which is necessary to prevail in the current possessory action. The trial court dismissed all of the plaintiffs' possessory actions and denied the Allens' motion for new trial. As previously indicated, the trial court subsequently attempted to grant the Allens a new trial regarding their possession as owners of their carport and driveway, but the plaintiffs had already filed this appeal.

Accordingly, we affirm the trial court's finding that Teresa and Leslie Allen did not posses the majority of the triangular-shaped portion of land in Section 16, because of Teresa Allen's admission that they had possessed the land, not as owners, but rather for Teresa's aunt, Estelle Ryder. We also affirm the trial court's finding that the painted trees in this case do not constitute a visible enclosure. However, we reverse as to the corner of Teresa Allen's carport and her driveway, which the Allens clearly intended to posses as owners, and which did constitute an artificial mark sufficient to give definite notice to the public of the character and extent of the possession.

In *Sterling v. Berthelot*, 02-921 (La.App. 5 Cir. 1/14/03), 839 So.2d 153, the fifth circuit, citing the articles governing the possessory action, found that the evidence was sufficient to support a ruling that the homeowner who was required to drive across adjacent property to access her carport had acquired a right of possession to the driveway. The court recognized that the homeowner had neither enclosed nor paved the driveway, but found that few properties in the area were developed, and that there was ample evidence that the homeowner and her husband had maintained the property for years, using it continuously for carport access. Based upon similar evidence in this case, we agree with the reasoning in *Sterling v. Berthelot*, and award the Allens possession of the carport and driveway that are located in Section 16.

As indicated above, La.Code Civ.P. art. 3662 provides that a judgment rendered for the plaintiff in a possessory action shall: (1) recognize the plaintiff's right to the possession of the immovable property and restore or maintain the plaintiff's possession of it; (2) order the defendant to assert an adverse claim of ownership of the immovable property in a petitory action to be filed within a delay to be fixed by the court not to exceed sixty days after the date the judgment becomes executory, or be precluded thereafter from asserting the ownership thereof, if the

18

plaintiff has prayed for such relief; and (3) award the plaintiff the entitled damages prayed for. In the present case, the plaintiffs' petition at paragraph 13 specifically requests all of the remedies enumerated in Article 3662 above. Accordingly, having rendered judgment recognizing and restoring the Allens' possession of their carport and driveway pursuant to La.Code Civ.P. art. 3662(1), we remand the case to the trial court to proceed with the mandates set forth in La.Code Civ.P. art. 3662(2) and (3).

**The Claims of Estelle Ryder**

Estelle Ryder testified at trial that she was born in 1916 and married Robert Gunter in 1933 in an old log or lumber house that burned down in the 1950's. The record contains a copy of a July 31, 1948 cash sale of 2.49 acres in Section 11, Township 5 North, Range 2 East, to Robert Gunter, married to Estelle Wiggins. Attached is a certificate of survey of surveyor Iron LaFarge dated March 13, 1947, which depicts the property sold to Gunter bearing the same legal description and measurements shown in the cash sale. The survey shows the 2.49 acre tract partially fronting on the common section line, and shows the old house straddling the section line with the majority of the house located in Section 16. Estelle Ryder testified that the old house faced west with a road running in front of it, and that she had a hog pen, garden, and orchard on the west side of the road. She testified that when Martin Lumber painted the trees, ostensibly in 1948-49, it went around her garden. Based upon the survey and Estelle's description, the majority of the house, the hog pen, the garden and orchard were located in Section 16.

Estelle further testified that there was an old barn where Teresa's house now stands. However, the barn would have been in Section 11, as that is where Teresa's house is located. Estelle Ryder described other improvements such as a smoke house, shop, well, and chicken house "behind" her old house. However,

19

according to the survey which accompanies the sale to Gunter, the rear of her old house was in Section 11. Estelle also testified as to conducting activities such as raising cattle, mules, and horses "in that lot," which is legally in Section 11. However, she subsequently testified that she kept the livestock west of the road, which is in Section 16. Estelle testified that the road was moved at some point, that the old house was L-shaped, and that she started using her back porch as her front porch "because the road was in the front" and "it come right out by that barn." She testified that the new road was approximately where Teresa's driveway is located, which we know is in Section 16. That testimony indicates that the back-porch-turned-front-porch of Estelle's old house was completely in Section 16, which is not what the 1947 survey shows. However, the survey does not show an L-shaped house, which actually could have a back porch west of Section 11 and an end portion, or the end of the L, located across the line inside Section 11.

Notwithstanding the confusion in her testimony regarding how much of Section 16 she was actually possessing in front of, and how much behind, her old house, and notwithstanding her lack of specificity as to when the front became the back of her house, between 1933 and the 1950s, Estelle clearly stated at trial that the old house burned in the 50s and she had lived in her current house since that time.

Other testimony by Estelle Ryder indicated that the old house burned in 1951, and at that time Carl Gunter built her a new house on Lee Bridge Road next to Teresa's current house, and that Estelle has lived in the new house for over fifty (50) years. Teresa's testimony reveals that Estelle's house is east of Teresa and under fence. During her cross-examination, Mrs. Ryder claimed that she did not remember her deposition testimony that she stopped keeping the garden and orchard in Section 16 between 1958 and 1963, and that the orchard was all grown up in woods.

20

In dismissing the plaintiffs' possessory actions by judgment dated June 17, 2005, the trial court referred to its previous written reasons for judgment dated May 10, 2005. Therein, after discussing the lack of visible enclosures and the failure of the painted trees to constitute a visible enclosure, the trial court referenced the activities alleged to constitute possession, and the old structures and the orchard and the livestock, and stated as follows:

> However, none of these structures remain on the property. Furthermore, plaintiffs were unable to give specific dates and times as to when these activities began and when they ceased. Some of the activities have not occurred for more than fifty (50) years. Therefore the court opines that the evidence and testimony introduced by plaintiffs was insufficient to prove the requirements of inch-by-inch possession within a visible boundary, which is necessary to prevail in the current possessory action.

We note that Mr. Townsend's survey for the plaintiffs in this litigation shows a fence running along a small southern portion of the tree line in Section 16, but Mr. Gremillion's survey does not. Mr. Gremillion testified that he could not locate the fence, and Mr. Townsend testified that he found evidence of a fence. Accordingly, both surveyors testified in support of their positions regarding this portion of a fence. Where the trial court's "finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong." *Rosell v. ESCO*, 549 So.2d 840, 845 (La.1989). We note that, in any event, the portion of fence depicted by Mr. Townsend and not by Mr. Gremillion does not enclose the tract of land at issue because there is nothing opposite the piece of fence, not along the invisible section line or inside Section 11, that would assist the fence fragment in constituting an enclosure.

Both Mr. Townsend's and Mr. Gremillion's surveys show another L-shaped fence west of the tree line that dissects the tree line in two places. However,

this partial fence does not follow the widely-spaced painted trees or enclose the property at issue. This is particularly true since, as previously stated, the section line east of the fence is invisible, and there is no structure along the section line or inside Section 11 to enclose even part of the property at issue. While the plaintiffs' pretrial memorandum lists the erection and maintenance of fences as an activity proving possession, the only fences alluded to in the record are possibly those around small chicken or hog pens, most of which no longer exist. Moreover, none of these partial fences, which in any event do not constitute visible enclosures around the property at issue, were identified by Estelle Ryder as having been placed there or maintained or used by her to enclose the property and indicate possession.

The only enclosure claimed by plaintiffs is the widely-spaced trees with yellow paint maintained by Martin Lumber in Section 16. While we find, as the trial court did, that the painted trees in this case do not constitute a visible line or boundary, we note again that there is no structure opposite the trees along or inside the invisible section line that would assist the tree line, even if were visible, to constitute an enclosure. Accordingly, as to Estelle Ryder, we find no error in the trial court's fact-finding or credibility determinations, and we affirm the trial court's judgment dismissing her possessory action.

IV.

**CONCLUSION**

Based upon the foregoing, we affirm the dismissal of the possessory action of Estelle Ryder. As to Teresa and Leslie Allen, we affirm the dismissal of the possessory action as to the land in Section 16 lying beyond the Allens' carport and driveway, but we reverse and enter judgment in favor of the Allens recognizing and restoring their possession of the portion of their carport and driveway that is located

22

in Section 16, Township 5 North, Range 2 East, in Rapides Parish, Louisiana. Accordingly, we remand the case to the trial court to proceed according to the mandates of La.Code Civ.P. art. 3662.

Costs of this appeal are assessed at eighty percent to plaintiffs and twenty percent to defendants.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED IN PART.**